### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

### STATE OF NEW-YORK,

**In January Term, 1840,—in the sixty-fourth year of the Independence of the United States.**

---

THE PEOPLE, *ex relatione* Ebenezer P. Upham, *vs.* ROBERTSON WHITE-SIDE.

Where the *power of appointment* of a certain class of officers is given by law to *two distinct bodies,* who are required to assemble in *separate chambers* and make *separate* nominations and then to meet together and compare the nominations made, and on disagreement to proceed to an election by *joint ballot:* no election is valid unless both bodies *assent* to go into *joint meeting* for that purpose and *actually attend.*

Nor is the *removal* of an officer valid unless there be a like assent and attendance, although one of the bodies *refuse* to go into *joint meeting* after due notice given to them for that purpose.

INFORMATION in the nature of a QUO WARRANTO. The attorney general on the relation of E. P. Upham filed an information alleging that the defendant had usurped, intruded into and unlawfully held the office of *treasurer of the county of Chautauque;* and that the relator was rightfully entitled to the office. The defendant *pleaded* that at a meeting of the judges of the court of common pleas and board of supervisors of the county, held on the 14th November, *1838, the office [ *10 ] of treasurer of the county having become vacant by the *removal* of the relator the former treasurer of the county, he, the defendant was duly appointed treasurer of the county; that he gave the necessary bond with sureties, was duly admitted into the office of treasurer; by virtue of which premises, he uses and exercises the office and enjoys all the privileges apper-

taining thereto, as it is lawful for him to do : *traversing* the usurpation. The attorney general *replied* denying the *removal* of the relator and the *appointment* of the defendant, as alleged in the plea.

The issue thus joined was tried at the Chautauque circuit in July, 1839, before the Hon. NATHAN DAYTON, one of the circuit judges. The jury found a *special verdict ;* in which they say, that on the 13th November, 1838, the first day of the annual meeting of the supervisors of the county of Chautauque, at the supervisors' room in the court house, in said county, the following resolution was passed by the board of supervisors, to wit : " *Resolved,* that the Hon. Judges of the county courts be requested to meet the board of supervisors, and form a joint meeting for the purpose of taking into consideration the propriety of removing the county treasurer, at five o'clock this evening ;" that a copy of the resolution was served upon each of the judges, then at Mayville, on the same day between two and four o'clock P. M. ; that the usual place of holding the joint meetings of the judges and supervisors is in the supervisors' room ; that at the time appointed for such meeting the supervisors were present at the usual place of meeting, and remained there from fifteen to thirty minutes, *but the judges did not meet with them.* On the same day notices were reciprocally given by the judges and supervisors to meet in joint meeting at nine o'clock the next morning *for the purpose of comparing nominations ;* that about nine o'clock the next morning the judges went into the supervisors' room, the supervisors being then in session, and declared themselves in readiness to compare nominations. Thereupon a motion was made and carried to go into joint meeting, and Odin Benedict, one of the supervisors, was chosen chairman of the joint meeting. William Rice, one of the supervisors, then *made a motion to proceed [ \*11 ] \*to the removal of E. P. Upham* from the office of county treasurer, and the resolution was immediately adopted. The judges, as soon as the motion was made, started to leave the room and were going out ; when the motion was taken the *first judge* remarked, as they were going, that they did not come for that purpose. The chairman immediately called for the ballots, which were handed in, and on counting them there were nineteen for the removal, three against the removal, and one not against the removal ; whereupon E. P. Upham was declared by the chairman, to be duly removed from the office of county treasurer. *The judges did not vote, nor were they present when the ballots were taken ;* they soon after returned and *proceeded to compare nominations for commissioners of deeds and superintendents of the poor.* While engaged in this business one of the supervisors moved that a notice be read to the judges. The *first judge* enquired whether the

notice related to the business before them. The supervisor replied that the notice would show. Another supervisor said that the notice did not relate to the business before them. The motion to read the notice was put and carried, and the notice was thereupon read by the clerk, the purport of which was to inform the judges that the office of county treasurer was vacant and inviting them to meet in joint meeting at two o'clock P. M. to make an appointment. While the clerk was reading the notice the judges left the room and did not return again till afternoon. Thereupon a motion was made and carried to adjourn the joint meeting till two o'clock in the afternoon, and the supervisors resumed their business as a *separate board* and *nominated* Robertson Whiteside as treasurer. About two o'clock in the afternoon *three* of the judges and the supervisors went into joint meeting again and *proceeded to complete the appointment of superintendents of the poor*, which had been left unfinished in the forenoon. When this was done Samuel Barrett, one of the supervisors made a motion that the meeting proceed to the appointment of county treasurer, which was carried : and thereupon O. Benedict, chairman, announced Robertson Whiteside as the candidate for the supervisors, and enquired *of the judges if they had made a no- [ *12 ] mination. Thomas B. Campbell, one of the judges replied, that they had made none ; and remarked further, that *they would have nothing to do with the appointment of county treasurer*. The ballot was then taken and resulted in a large majority of the votes given, for Robertson Whiteside the defendant. Whereupon he was declared to be duly appointed. *As soon as the balloting was about to commence, the judges left the room and did not return.* The supervisors and judges were all called upon to vote ; *the judges did not answer to the call, and did not vote.* A certificate of appointment was thereupon made out and signed by the chairman of the board of supervisors, and presented to the *senior judge* to sign (the *first judge* having gone home) who refused to sign it. The certificate was afterwards presented to the *first judge* who also refused to sign it. Thereupon the certificate was filed in the office of the county clerk, and Robertson Whiteside executed the requisite bond with sureties duly approved according to the statute, and took and subscribed the requisite oath, which were both duly filed in the office of the county clerk. On the first day of the meeting, the judges in their room, *resolved* not to remove the county treasurer, and to take no part in any proceedings for the purpose ; and the board of supervisors were repeatedly apprised of their determination. The *special verdict* then concluded in the usual form.

*S. Stevens*, for the relator. The defendant was not duly appointed. The appointing power consisted of *two distinct boards :* the *judges* of

the county courts and the *board of supervisors* holding their meetings in *separate chambers*, but required to assemble in *joint meeting* for the purpose of making appointments ; thus constituting two *integral parts* of *the appointing power ;* neither of which could act unless both concurred to assemble in joint meeting, for without such joint meeting no appointments could be made. The statute directed that nominations should be *separately* made by the two boards, and then the two boards [ *13 ] were required to meet and compare their nominations. *If the nominations agreed, the person on whom they agreed must be appointed ; but if the boards disagreed in their nominations, they were required immediately to proceed and elect a treasurer *by joint ballot.* 1 *R. S.* 110, *and Stautes of* 1806, *p.* 700, § 1. No appointment could be made except when the *two boards* were assembled together for the purpose of making an appointment either by carrying into effect nominations *separately* made, in which they agreed, or by electing *by joint ballot* the person to be appointed. If either board refused to meet the other, no appointment could be made ; as neither separately had the power to make an appointment. Here there was not a joint meeting for the purpose of comparing nominations of a county treasurer. The judges had not made any nomination, and though they met the supervisors it was for a purpose other than that of appointing a county treasurer. They had resolved not to have any thing to do in the matter, and had so informed the supervisors. A meeting of the two boards for one purpose could not, without the assent of each, be converted into a meeting for another and distinct purpose. 11 *East,* 85, *or* 87, *n.* Even where there is a *joint meeting* of bodies forming distinct and integral parts of a legal existence created by law for certain specified purposes, and such meeting be held with the assent of all, if one of the bodies withdraw the other loses all jurisdiction over the subject matter, although the withdrawal be wrongful and unlawful. 6 *T. R.* 268, 280. 8 *East,* 389. 2 *Maule & Selw.* 141. Even a corporation becomes defunct, where an *integral* part no longer exists. The case *Ex parte Humphrey and others,* 10 *Wendell,* 612, does not impugn this doctrine. There the two boards were in joint meeting ; one having made a nomination, and the other having refused to do so, and an election made by a majority of the two boards *by joint ballot,* was held good.

*A. Taber,* for the defendant. Formerly a *county treasurer* was appointed by the board of supervisors of each county in the state, [ *14 ] and he held his office during the *pleasure of the board. 1 *R. S.* 114, § 13. Subsequently a statute was passed that whenever a vacancy should happen in the office of county treasurer, the office should be filled in the manner provided by law for the appointment

of commissioners of deeds. *Statutes of* 1836, *p.* 700. That manner was, that the appointment should be made by the *judges of the county courts* and by the *board of supervisors*, upon nominations separately made by the two boards, and in other respects complying with the requirements of the statute. 1 *R. S.* 109, § 29. In consequence of the refusal of the board of supervisors of Munroe county to make a nomination of county superintendents, *see* 10 *Wendell*, 612, an act was passed by the legislature authorizing an election to be held where one of the boards failed or refused to nominate. *Statutes of* 1837, *p.* 504. Upon those statutes the question arises whether it is in the power of either board by wilful neglect of duty to prevent the appointment of a county treasurer. In the case *ex-parte Humphrey and others* 10 *Wendell*, 612, the attempt was made but signally failed, and the board there in fault received the well merited rebuke of the supreme court. The court there held that the omission of the supervisors to nominate county superintendents should be considered as a disagreement with the nomination made by the judges, rendering a *joint ballot* necessary and proper. This was in 1834, and in 1837 the act above referred to was passed, and thus a construction both legislative and judicial was given to the statutes upon this subject. The conduct of the supervisors in the case *ex-parte Humphrey*, was equivalent to the withdrawal of the judges in the present case, and if the election in that case was valid, then should the election in this case be sustained. The cases cited by the counsel for the relator relative to the rights and duties of *corporations* aggregate, it is submitted have no application to the question before the court. The legislature in conferring the power of appointment upon the judges and supervisors as to certain officers, could not have intended to give one board a *veto* upon the acts of the other.

*Mr. Stevens*, in reply, said he could not perceive what bene- [ *15 ] fit the defendant could claim from the act of 1837. It directs if either board fail or refuse to nominate, they shall immediately proceed to elect by *joint ballot*. This does not render the duty more imperative than the former act; and consequently if either board refuses to assemble in joint meeting, there can be no joint ballot. Whether they will so assemble, especially when the purpose of the meeting is the removal of an incumbent from mere party considerations, is a matter of discretion. If such was the fact here, moral delinquency is not imputable to the board which refused to act.

*By the Court*, NELSON, Ch. J. By the revised statutes, *vol.* 1, *p.* 114, § 13, county treasurers were to be appointed by the board of super-

visors, and they held their offices during the pleasure of the board.    The subsequent act, *Statutes of* 1836, *p.* 709, provided, that whenever a vacancy happened in the office of county treasurer, it should be filled in the manner provided by law for the appointment of commissioners of deeds. That act will be found in 1 *R. S.* 109, § 29.    The same act of 1836, also provided, § 2, that the county treasurer may be removed by the *joint ballot of the judges of the county courts and boards of supervisors*, at an annual meeting of the latter ; and that a majority of the judges and supervisors present, and voting, shall be necessary to do the act.

It is conceded the *relator* was lawfully in office on the 14th November, 1838, when the attempt was made to remove him, and the only material question arising upon the special verdict is, whether he has been removed by the competent authority.

The power is conferred upon the judges and board of supervisors in *joint ballot.*    A majority of the latter body may constitute a board, 1 *R. S.* 367, § 5, but of the former, there may be a doubt if *all* should not be present.    2 *id.* § 27.    Individually, I am not disposed to regard this latter section as conclusive on the question, and the common law as [ *16 ] understood at this day in England, I think is otherwise.    *See Blacket* v. *Blizare*, 9 *Barn. & Cres.* 85 *and* 648.    7 *Cowen*, 526, *note, and cases there cited.*    9 *Wendell*, 17.    *Willes*, 215.    By that section a power of a public na-ture conferred upon three or more persons, may be executed by a majority present and acting.    Our cases, or rather *dicta*, seem to have followed a suggestion in *Grindley* v. *Barker*, 1 *Bos. & Pull.* 229, which gives countenance to the idea that all must be present, and then a majority may act.    The revisers obviously had this rule in their mind in drafting the section—the object of which was, as they avow, to conform the rule governing the execution of an authority for a private purpose, to the one supposed to exist respecting an authority of a general and public nature.    They did not intend to alter the latter rule, but, I think, they mistook it as understood in England at the time, and it has never been otherwise determined in this state.    I do not intend, however, to discuss the point here, as the question does not arise on the *removal* of *Upham*, the only one I shall examine : it does on the *appointment* of *Whiteside.*

Was the relator removed by competent authority ?    The judges, it is certain, did not participate in the act; on the contrary, they expressly resolved otherwise at their chambers, and so advised the supervisors. When the latter attempted to force them into a vote in spite of their resolution, they left the room, and refused to ballot; the supervisors alone acted in the matter.    It is, I think, impossible to sanction such an execution of the power ; it would be legalizing a mere mockery of the statute.

The motives of the respective boards we do not enquire into ; the ques-

tion of authority cannot depend upon what they may have been. Nor have we any evidence before us by which we are enabled to determine which was right. The removal was not for cause, as provided for in the act of 1836, § 3, 4, but at pleasure, and must be at the pleasure of *both* bodies: the concurrence of the one body by *meeting in joint ballot* is as essential as that of the other. Could the judges have made a removal after the supervisors had refused to act, and left them? No one, I think, will pretend they could; and yet the argument is equally as strong in favour of such an execution of the power, as in the case before us.

*In the analogous case of powers conferred upon corporations [ *17 ] aggregate, consisting of several distinct parts, called integral parts, and where the concurrence of each is essential, even if one of the parts is improperly absent, the acts of the remaining body are nugatory. 1 *Maule & Sel.* 141. 8 *East*, 389. 7 *Cowen*, 530, *note*. This is a much stronger application of the rule than in the case before us, because here it cannot be said that the judges acted improperly, as they had the same right to determine as to the necessity or expediency of the removal, as their associate body; the statute having conferred upon each, equal concurrent powers in this respect.

If any thing further was necessary to confirm the above view of the statute, we might refer to the last clause of the 2d § of the act of 1836, which requires that a majority of the *judges and supervisors present and voting*, shall be essential to the removal. The act is doubly explicit. It not only confers the power upon the two bodies *in joint ballot*, but a majority of each must be *present* and *voting*. Here the judges were not present, nor did they vote.

The argument for the defendant goes the length of maintaining against the terms and whole scope of the act, that *each integral part* of the body upon whom the power is conferred, may execute it. The supervisors have alone acted; if effectually, so may the judges under like circumstances. Such an extraordinary result would seem to require no argument to refute the premises from which it must be drawn.

If the removal was made without authority, the relator is still the lawful incumbent, and the attempt to appoint the defendant of course failed.

For the above reasons, I am of opinion the plaintiffs are entitled to judgment.

Judgment for plaintiffs.