McKune *v.* John B. Weller.

PEOPLE *ex rel.* McKUNE *v.* JOHN B. WELLER, Governor.

An election to fill a vacancy in the office of District Judge is invalid, unless made under and in pursuance of the proclamation of the Governor.

The statute requiring the Governor to issue his proclamation of election to fill vacancies in certain offices is mandatory, and an essential prerequisite to all such elections.

The object of the proclamation is to give notice to the electors that such an election will be held.

An election cannot take place under the Constitution without statutory regulation. All the efficacy given to the act of casting a ballot is derived from the law making power and through legislative enactments; and the Legislature must provide for and regulate the conduct of an election, or there can be none.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an application to the Court below for a *mandamus*. The facts are as follows:

A. C. Monson was elected Judge of the Sixth Judicial District at the September general election, 1852; he resigned in 1857, when Charles T. Botts was appointed and commissioned by the Governor. No proclamation was made by the Governor for an election for Judge at the general election of 1858, for the unexpired term of Monson; that is for the intervening period between September, 1858, and January, 1859. At the general election of September, 1858, John H. McKune received, for the short term, two thousand and fifty-six votes, being a majority of those cast for Judge for that term, but not a majority of votes cast at the election; and he is also returned as having received a majority of all the votes cast for the long term. He obtained the certificate of the proper county officer of his election for the short term, and applied to the Governor for a commission, which was refused. This proceeding is taken to enforce that demand.

The Court below refused to issue the writ and the relator appealed to this Court.

*Currey & Crocker* for Appellant.

1. Has the relator right to the office for which he demands a commission?

McKune *v.* John B. Weller.

By the Constitution, vacancies in office were contemplated, and provision is therein made for supplying the same, by the grant of a commission by the Governor, which should expire upon the occurrence of a specified event.    (Cons., art. 5, sec. 8.)

By the statute entitled " Courts of Justice," (Wood's Dig., 150, sec. 15) it is provided that the Governor shall fill a vacancy which may happen in the office of District Judge, by granting a commission, which shall continue until the election and qualification of a Judge in the place of the one so appointed and commissioned; and also, it is declared by the same statute, that " a Judge to fill the vacancy shall be chosen at the first general election subsequent to the occurrence of the vacancy."

By section 43 of the statute entitled " Office," (Wood's Dig., 561) it is also provided, that whenever a vacancy shall happen in the office of District Judge, the Governor shall fill the same by granting a commission, which shall expire at the next general election by the people, at which election such officer shall be chosen for the balance of the unexpired term.

There was a vacancy in the office of the District Judge of the Sixth Judicial District, which occurred long before the general election of 1858, which was filled as provided by the Constitution and laws; and here arises the inquiry, was the relator elected at the last general election District Judge for the balance of the unexpired term existing in the office of District Judge of such district?

The answer to this is, that he was so elected, if there then existed a balance of a term then unexpired.

The term of six years, mentioned in sec. 6, art. 8, of the Constitution, is an entity, however many incumbents thereof there may be during such term.    See in connection to this question, sec. 5, art. 6, of the Constitution; and Smith *v.* Halfacre, 6 How. (Miss.) R., 581; People *v.* Green, 2 Wend. 266; Coutant *v.* People, 11 Wend. 512; Nubling's Case, 6 Ohio State R. 40; Hughes *v.* Buckingham, 5 Sm. and M. R.; People *v.* Landon, 8 Cal. R. 12; Wood's Dig. 375, sec. 4; *Ib.* 150, sec. 15; *Ib.* 561, sec. 43.

The relator received a large majority of all the votes cast at the last general election for the " balance of the unexpired term" men-

McKune *v.* John B. Weller.

tioned, and obtained a certificate of election from the proper officer: such being the case, he has a right to the office, unless some objection or circumstance exists rendering such election a nullity.

It is said the proclamation of the Governor did not designate the office in question as one to be filled at the last general election.    Here a dereliction of duty is interposed by the respondent as a defense, strange as it may seem.

But such defense is untenable.

The statute provides, that " a Judge to fill the vacancy shall be chosen at the first general election subsequent to the occurrence of the vacancy."

The statute entitled " Elections " (Wood's Dig. 375) provides that the annual election generally held in September of each year shall be called the general election.    Special elections are therein defined; and it thereby appears, that special elections can only be held for the purpose of filling vacancies in office.    No special election can be held without the proclamation of the Governor *ordering* it, and appointing the time at which the same shall be held.    The proclamation is a condition precedent to the validity of a special election.    Not so with a general election; because it is appointed by the statute, and by the statute the time for holding the same is fixed.

As already appears, special elections can only be held to supply vacancies in office; but the converse of this, that all vacancies in office must be supplied at special elections, is not true, because the statute has declared otherwise.    Certain vacancies must be filled at the general election.

See on this subject, Wood's Dig. 375, sections 1, 3, 5, 8; *Ib.* 561, sec. 43; *Ib.* 148, 150, sections 4, 15; People *ex rel.* Harris *v.* Brenham, 3 Cal. 477 ; People *ex* Davis *v.* Cowles, 3 Kernan, 350.

If these authorities are to be followed, then the relator has right to the office and commission demanded.

*Attorney General* for Respondent.

The question is whether relator is entitled to the commission sought. Upon this question I would submit the following propositions:

1. That under our Constitution, District Judges are elected for the term of six years, and that it is immaterial, so far as the term is concerned, as to whether they are elected to fill a vacancy which *has* occurred by death, resignation, or otherwise, or is *about* to occur by the expiration of the term of an incumbent.

2. That the Constitution does not fix the day at which any term shall commence, and therefore it is competent for the Legislature to do so.

This power is deduced from the general doctrine that the Legislature may exercise all power not prohibited by the Constitution, and I have not found such prohibition.

3. That the Legislature has, by law, fixed the time at which the term shall commence, and that such time depends upon the particular facts and circumstances attending each case.

If, for instance, a Judge was elected at the last election, to fill the *vacancy about* to occur by the expiration of the term of another, then, under the law, his term would commence on the first of January next. Wood's Dig. 150, art. 634.

But if elected to fill a *vacancy* which had already happened, then his term would commence immediately upon his qualification.   Art. 635.

4.   That although every District Judge is elected for the term of six years, yet the legality of his election, when brought in question, depends upon the circumstances under which the election took place.

To illustrate : if the election had been to fill a vacancy which *is about* to occur, then his receiving the proper number of votes, &c., at the general election, would entitle him to the office, without regard to whether notice of such an election by proclamation had been given, the law in that case being sufficient notice.   But if the election was to fill a vacancy which *had occurred* by death, resignation, or otherwise, before the expiration of the term of another, then the notice by proclamation would have been absolutely necessary to the legality of the election.   People v. Porter, 6 Cal. 26.

No election of a District Judge would be valid without a proclamation calling it, except that provided for in art. 634, p. 150, Wood's Digest.

An election to fill the vacancy caused by the resignation of Monson would have been a special election, although held at the same time as the general election.

McKune *v.* John B. Weller.

Before such an election could have been held, a proclamation for that purpose must have been issued. (People *v.* Porter.) Without such a proclamation, the people would not be supposed to know that Monson had ever resigned. No proclamation was made for that purpose, and therefore the only legal election which was had for District Judge was one to fill the vacancy *about to occur* by the expiration of Monson's term.

For the purposes of this action we must regard Monson as still on the Bench, no knowledge to the contrary having ever been lawfully communicated to the voters of his district.

My conclusions then are, that McKune (if elected at all) was elected for a term of six years, commencing the first of January next, and that he was entitled to a commission to that effect. Such a commission has been delivered to him.

It has been suggested by the other side that McKune's six years should commence to run from the time of his qualification. To that end he should have been elected to fill the vacancy caused by Monson's resignation. But such an election would, as I have shown, have been a special election, for which a proclamation was necessary.

It seems to me clear that the question of the *time* for which a judge is elected, is not affected by, nor does it affect, the question whether the election was at a general or a special election. The two propositions are wholly distinct, and are not dependent the one on the other.

In connection with this branch of the case, I respectfully refer the Court to my brief in the case of Brodie *v.* Weller, argued at this term.

BALDWIN, J., after stating the facts, delivered the opinion of the Court—TERRY, C. J., concurring.

The first question which is made is as to the right of the relator to the office he seeks, or to the commission as evidence of that right. The objection has been taken by the Attorney General that, conceding that the short term, thus described, might have been filled by election, if otherwise regularly had, yet there was no legal election in September, 1858, for a Judge for that term, because no proclamation was made of such election by the Governor. It is urged in reply, by the counsel

of the relator, that an election for an office of this character, and held under the general law, does not depend, for its validity, upon any act of the Executive, but rests upon the constitutional right of the voters to select the incumbent, and upon the general statute prescribing the time, place and manner of the election. This precise question has never been decided in this State, though the counsel on both sides have cited cases (which we purpose reviewing) to maintain that, in principle, the question has been decided in favor of their respective views.

By statute (Wood's Digest, 375, art. 2116, sec. 5) it is made the duty of the Governor, at least thirty days before any general election, to issue his proclamation designating the offices to be filled at such election, and to transmit a copy thereof to the Board of Supervisors of each county of the State ; and by the succeeding section, it is made the duty of the Board of Supervisors to give at least ten days' notice thereof, by posting, or causing to be posted up, at each place of holding elections, in their county, a copy of such proclamation, and to insert the same in some newspaper published in the county, if any be so published.

The statute having required that the proclamation of the Governor and notice by the Supervisors shall be made previous to the election, it would seem to devolve upon the relator to show very clearly that these acts were not necessary to the validity of his election. It may be a difficult matter to define with precision the limits between those acts prescribed by the sovereign authority which are directory—that is, which may be obeyed or not, without affecting the validity of an act, and those which do affect it. Complaint is often made, and, not without reason, that Courts have sometimes gone too far in practically setting aside or holding nugatory the positive provisions of the statutes ; for it is obvious, that where statutes affix no penalty for non-observance, and it is held that the provisions of them do not affect the validity of the acts to which those provisions relate, it is nearly the same thing to hold the acts valid and to hold that these provisions are entirely inoperative. A brief review of the authorities cited by the counsel of the appellant will go far to show where the true line of distinction is between statutes directory in their character, and those, the provisions of which must be substantially followed, in order to impart

McKune *v.* John B Weller.

validity to the acts to which they relate.    In order to ascertain this fact, and determine the necessity of the notice of this election, and the effect of a want of it, we propose to examine these cases in their order. The first case cited in point of time is that of Rex *v.* Foxdale and four others, (1 Burrows, 445) in which it is said (p. 447) that there is a known distinction between circumstances which are of the essence of a thing required to be done by an Act of Parliament, and clauses merely directory.    The precise time in many cases is not of the essence.    The · illustration of this rule is given in the case of Rex *v.* Sparrow, (2 Strange, 123) in which it was held, that though the Justices had been guilty of neglect in not appointing Overseers of the Poor within the time specified by the statute, yet that they might be compelled to discharge this duty at a subsequent time.    In Smith's Commentaries on Statutory and Constitutional Construction (p. 792, sec. 679) the author, after citing and approving this doctrine, says : " A distinction in the application of the rule in the cases cited should be observed, that is, between cases where certain acts to be done are of the essence of the thing required to be done by the act, in which case it is imperative, and things which are not of the essence ; in the latter case, it is merely directory ; and this is one of the criterions by which to determine whether the requisition is imperative or merely directory."    *    *    * Lord Mansfield says : " There is a known distinction between circumstances which are of the *essence* of a thing required to be done by an Act of Parliament, and clauses merely *directory*.    The *precise time* in many cases is not of the *essence*."    This distinction prevailed in the case of the Thames Manufacturing Company *v.* Lathrop.    In that case, a statute required the Assessors to return an abstract of their assessment lists on or before the first day of December in each year, and the question arose, whether an assessment ·was valid when the assessment was not returned until after the time specified in the act.    The Court held that the general statute had been made for the assessment of taxes, by which Assessors were to be chosen, whose duty it was to receive lists of all the inhabitants, and having perfected them by adding property omitted, by valuation of the items, and by the requisite assessments, to return an abstract of the lists to the Town Clerk, on or before the first of December in each year.    The lists and valuation of the

Town Clerk were directed to be submitted, when requested, to the inspection of every person liable to pay taxes.  A Board of Review was constituted, to hear appeals from the doings of the Assessors, and having given not less than ten days' notice, they were to meet on or before the first Monday of January in each year, to determine the appeals made to them.   The assessment list, as annually made and corrected, was the rule for the apportionment of taxes to individuals.   From this view of the law it appeared to be a positive provision, that the lists should be returned to the office of the Town Clerk on or before the first of December in each year.   This direction was imperative, and was alone alterable by the Legislature.   The Court must take the law as they found it, and could not say that a return after the first of December was valid, unless they assumed the character of law-makers. The reason of this legislative provision was very apparent.   It was for the general benefit of every inhabitant of the towns, that each might inspect the list of his estate, and if he believed injustice done him, that he might appeal for its correction to the Board of Review.   A time for the return of the lists should be limited, the general convenience demanded it, and that it should be sufficiently early for universal inspection, and preparation for a future hearing before the Board of Review, was perfectly obvious.   On this principle the Legislature appointed the first of December, as the ultimate period of the return. This branch of the law was imperative, and as unchangeable by the Courts as any other ; and were it within their competency it would be as difficult to assign a period more reasonable.   That the return should punctually be made was indispensable.   A different principle would nullify the law, and produce the general inconvenience arising from an unlimited return.   No person in such case could know when he might inspect his list ; and if the return was late, no time either for reflection or preparation for a review could be had.   If a Legislature, in a charter of incorporation, had authorized the laying of taxes upon lists returned to a public office at a specified time, the necessity of a strict observance of limitation would not admit of a question.   The case before the Court was strictly analagous to the one supposed.   The general law was an enabling act to all the towns ; it had prescribed the subjects of taxation and the mode, and as there was no authority to

tax, except what was conferred by the law, it must be strictly observed. It had been inquired, whether the returns of the abstract of the lists by the Town Clerk to the Controller must be by the first of March in each year, according to the provisions of the Act in question; and if not, whether the Legislature is precluded from laying taxes upon the assessment lists? Unquestionably, it is not. The case put and the one under discussion were in no respect analagous. The abstract assessment lists of the towns must be strictly returned to the Town Clerk, or there was no legal assessment. But if a Town Clerk does not return to the Controller an abstract of the assessment lists, pursuant to the provisions of the law, the list was not invalidated, but he was subjected to a penalty."

7 Hill, Stryter *v.* Kelly, is cited, but that case only holds that where a statute declares that the Common Council should vote by ayes and noes, the provision on that subject in the charter of New York was merely directory. In that case, Judge Bronson dissented; and we are inclined to think had the best of the argument. In 11 Wendell, 605, People *ex rel.* Smith *v.* Peck, etc., the principle declared in head note is, that an election of trustees of a church is good, although the requirements of the statute in respect to the notice of such election have not been complied with, provided the election was fairly conducted, and there is no complaint of want of notice. But this note of the Reporter is broader than the decision of the Court; for Judge Savage says : " The Judge stated to the jury that the election was not necessarily void because the notice given by the trustees to the minister was less than *one month*, etc., and did not contain the names of the trustees whose seats became vacant, and was not announced for two successive Sabbaths, provided the election was fairly conducted, and all in fact had notice ; but if the omissions were fraudulently made, or the election had thereby been prejudiced, then the omission should invalidate the election. All this I think is sound doctrine." In the People *v.* Runkel, (9 Johns. R. 158) the Court says : " We must give the statute a reasonable and liberal construction for the benefit of the churches. (See also, 6 Cowen, 23.) The object of the notice is, that the voters may be fully apprised of the election, and may attend and exercise their rights. There is no pretense in this case that every

4

voter was not present, for they appear to have come from a distance; the time was well understood, and had been the same for many years. No evil resulted from the omission, if there was any; no fraud was imputed, and all parties attended and thereby admitted notice." Rodelbaugh *v.* Sanks (2 Watts, 9) merely holds that a section of the Act of Assembly of Pennsylvania, providing that marriages shall be solemnized before twelve witnesses, etc., is merely directory, and the pregnant reason is given by C. J. Gibson, " that if it were held to affect the contract, the effect would be to bastardize a vast majority of the children which have been born within the State for half a century." The last case cited is that of the People *v.* Cowles, reported in 3 Kernan, 350, and is really the only one cited by the appellant (except one in our own State, to which we will presently refer) which seems to bear with any directness upon the precise question before us. This case, therefore, will justify a more detailed examination than we have given the others. The question came before the Court of Appeals of New York on this state of facts: Robert H. Morris was elected Judge of the Supreme Court of New York, for eight years, from first of January, 1853; on the twenty-third of October, 1855, he died. A general election of Judges was held on the sixth of November, 1855. No notice was given by the Secretary of State of this election to fill the vacancy in Judge Morris' term—the laws of New York requiring that officer to give the notice; but the death of Morris occurred after notices given of the other elections and after the time given for making such notification. At the election, the relator was elected. The Governor, however, not regarding the election of relator, appointed defendant to the office. The Supreme Court of New York, at special term, decided in favor of the defendant; and afterwards, at a general term, modifying the judgment in an unimportant particular, confirmed the judgment of the special term. The case was carried to the Court of Appeals, and that Court, by a majority—five to three—reversed the judgment. The opinion in the case in 3 Kernan was delivered by Johnson, J., and Denio, Comstock, Selden and Hubbard, Js., concurred. Mr. Justice Wright delivered a dissenting opinion, in which Justice Mitchell and Johnson concurred. The stress of the opinion of the majority was on the peculiar features of the Constitution of the

McKune *v.* John B. Weller.

State ; from which they deduced the opinion, by a process of reasoning which is almost impossible for us to comprehend, that when the office of a Justice of the Supreme Court becomes vacant before the expiration of his term of office, the vacancy is to be supplied by the electors of the Judicial District in which it exists, at the next general election of Judges, although the vacancy occur at so late a day that no notice is or can be given by the Secretary of State or other officer, pursuant to the statute, that a Justice is to be elected to fill the vacancy ; and that when the incumbent, whose term of office would not have expired for several years, died on the twenty-third of October, and the electors of the district at the general election of Judges, on the ensuing sixth of November, elected a person to fill the vacancy, such election was valid, notwithstanding no notice was given by the Secretary of State that a Justice was to be elected to fill the vacancy at the election. It will be seen, by a careful perusal of the opinion, that this conclusion was induced by the peculiar structure of the Constitution of New York, and that it was not necessary to decide whether, in an ordinary case of vacancy occurring before the time of giving notice, by the Secretary of State, as required by the statute, a failure to give such notice would affect the validity of the election. But even if this judgment were otherwise fully in point, it is stripped of much, if not the whole of its authority, by the fact that it is, at best, but the judgment of five Judges against three of the same tribunal, those three supported by a contrary ruling of the Supreme Court at a special term, and sustained substantially by the Supreme Court at a general term, after the subject had been thoroughly discussed and maturely considered. But as to the particular point in this case, the decision, if it be for the relator here, is mere *obiter*, and is not even noticed in the report of the case as a point decided. The dissenting opinion of Mr. Justice Wright on the point involved expresses so forcibly our conclusions, that we insert it as expressive of our own views : " It is not contended by the relator that he has any right to the office, unless his interpretation of the thirteenth section be the correct one. He reposes himself upon the ground that the Constitution contains a positive direction as to the times when vacancies shall be filled, and that it would be an infringement of the instrument to restrict the right of the elector, by legislative

enactment, to a particular kind of vacancies, viz: such as had occurred twenty days before, or of which the Secretary of State, and other officers of the Government have actually notified the people.   He takes the unqualified position that the section is a restriction upon legislative authority, and that no statute can be enacted which shall interfere with the constitutional privilege or right of the elector, when a vacancy occurs prior to the day fixed for voting for Judges throughout the State, to cast his ballot for a person to fill the vacancy.   By his construction the election to fill the vacancy is one held, not pursuant to any statute, but an unregulated assemblage of the electors under a constitutional provision.   It is urged that it is not strictly correct to say that the election to fill the vacancy is held under the Constitution, as the Legislature provides the machinery, and the Constitution only fixes the time.   But is it true that anything is provided by statute ? A popular election is being held for the choice of other officers, regulated and conducted according to law, but not to fill a vacancy in the judicial office.   The elector may embrace the occasion to deposit his ballot, designating a person to fill a vacancy, but not under any statutory provision.   He acts not pursuant to law, but the Constitution. Thus to sustain the relator's position, we are driven to assume that the term ' election,' as used in the Constitution, means something else than an assembling of the electors to vote under and in pursuance of statute authority ; and that a valid election may be held independent of, and indeed in restraint of legislative regulation.   That all the elector has to do is to deposit his ballot at the time fixed for a ' general election of Judges,' even though there be no statute regulation, or no authority by law, and the ' election ' contemplated by the Constitution is complete.   In this case it is not pretended that the election was held under any statute.   No notice was given that a vacancy existed, or that the electors were required to fill it.   No provision was made by law for receiving or canvassing the votes cast to fill a vacancy in the judicial office, or for ascertaining the fact whether there had been any choice. Before the votes were canvassed, the relator took the constitutional oath, and claimed to be entitled to the office, which he might well do if the ' election ' was one unregulated by law, and valid by the simple force of a constitutional provision.   I had supposed that it was a prop-

McKune *v*. John B. Weller.

osition not to be controverted, that it is by virtue of statutes alone that all valid elections are held. It has never before been pretended that a person could make title to an office through the popular vote, unless such vote was cast in pursuance of legislative regulation and authority. All the efficacy given to the act of casting a ballot is derived from the law-making power, and through legal enactments; and indeed, the Legislature must provide for and regulate the conduct of an election, or there can be none. The convention found the subject of popular election instituted and regulated by law, and the framers of the Constitution are to be understood as speaking of, and referring to such an entity as then existed, or might afterwards exist, by force of statute regulation. It is not to be assumed that the ' general election of Judges' mentioned in the thirteenth section, is not that authorized by law, and held under and in pursuance of legislative enactments, but a meeting of the people to vote under the organic law itself; and without such assumption the right of the relator has no foundation. His argument is that the Constitution appoints the time for the people to meet and vote, and all that is required to constitute a valid election, within the meaning of the thirteenth section of the Judiciary article, is for the electors to cast their ballots. Nay further, that any statute regulation practically preventing the filling of a vacancy at the time designated in the Constitution, is absolutely void. Though the convention of 1846 may have been justly charged with legislating, rather than erecting the frame work of government, I may be allowed to repel the imputation (having been myself a member of that convention) that they so far mistook the nature and purposes of a written Constitution, as to suppose that it might or could contain within itself the elements of active enforcement. They meant by the term ' election,' that institution created and existing by operation of law, and that alone, and which, without the exercise of legislative power, could have no efficiency. The relator must make title under and in pursuance of a statute, or not at all. He must have received a plurality of votes at an election held pursuant to law, or he has no title or claim to the office. It was at such an election the Constitution provided that vacancies should be filled, and at none other."

" But let it be conceded that the Constitution only fixes the time,

and all other essentials to constitute an election, except giving notice, are left to be prescribed by the Legislature, and that it has the power, and the obligation rests on it to provide for conducting the election; still, would this be a valid election? It is to be observed that, by fixing the time, the Legislature are virtually restricted from declaring that it shall be an essential requisite to a valid election, that the electors shall have official notice that a vacancy exists. Nothing is left to the law-making power but to provide for receiving the ballots, canvassing the vote, and declaring the result. Is not notice to the electors that a vacancy exists and is to be filled, an essential characteristic, independent of any statute requirement, to a valid election? I think that it is."

" Notice to the electors lies at the foundation of any popular elective system. The elector cannot act through the ballot without notice that a vacancy exists to be filled. Necessity and sound policy demand that every elector shall have both the knowledge and the opportunity to enable him to exercise the elective right deliberately and intelligently. In our elective system, the duty of giving notice is devolved upon the Secretary of State. The Legislature has wisely provided that the notice shall be given by this officer, within a time and in a way calculated to give the fullest notice to the electors. It may be that, under this statute regulation, the omission to give the required notice of an election of a Judge for a regular term would or ought not to vitiate the election. The elector should be presumed to know the law, and consequently, at what period the regular term of the public officers to be voted for will expire, and be prepared to act accordingly. But there can be no such presumption when the election is to fill a vacancy. I believe that no case can be found, holding that notice to the electors of the existence of a vacancy, and calling on them to fill it, is not essential to give validity to the meeting of the electoral body to discharge the special duty. Certainly, it could rest on no principle or sound rule of governmental policy. In the nature of things, notice to the elector that a vacancy exists, and calling on him to fill it, is an essential characteristic of a popular election; and public policy and safety require that it should be given in such form as to reach every elector who has the duty to discharge. Notice, therefore, being an

essential element of an election to fill a vacancy, whether we regard the election at which the relator claims to have received a plurality of votes held in pursuance of the Constitntion or the law, it was equally invalid."

The case of the People v. Brenham (3 Cal. 477) is the authority chiefly relied on by the relator. It is not necessary to assail that case ; for, as we shall show, the principle there announced does not militate against the respondent. But it is proper to remark that the force of this case is somewhat shaken by the fact that it was decided by a divided bench, and that the two Judges who concurred in the judgment agreed to it upon different grounds. It is not easy to support that decision, even limited and qualified as it has been in the subsequent case of the People v. Porter, (6 Cal. 26). The able argument of the respondent's counsel suggests, to say the least, some doubts of the correctness of the principles there laid down. But the utmost extent to which the Court go in that case is to hold that no proclamation or notice is necessary to give validity to an election when the term is fixed by law, and expires, by limitation, at a given period, and the office is to be filled by statute at the time prescribed by law. In such case, it is held, as seems to be conceded by Mr. Justice Wright, in the case before cited from 3 Kernan, that the people are charged with a knowledge of the law, and must be held to act in accordance with that knowledge. In such case, the election must be held in any event, and it is not in any way dependent upon any extrinsic or contingent event. Though, as will be seen, we do not approve of much of the reasoning from which our predecessors deduced this conclusion, as we shall have occasion hereafter to explain, yet we do not here question the propriety *of that judgment* upon the facts stated. In the People v. Porter, (6 Cal. 26) this same general doctrine came under review. That was the case of an election by the people of a Judge of the County Court, to fill a vacancy occurring by the resignation of the previous incumbent. No proclamation was made by the Governor. The Governor appointed Mr. Porter after this election. The present Chief Justice delivered the opinion, and after stating the facts, says : " This being the case, was the election of Mr. Leake, which occurred on the 5th of September, legal ? The

law provides that vacancies in certain offices shall be filled by election at the next general election after the vacancy occurs. To render such election valid, it is necessary that it shall be conducted in the manner prescribed by law. The law requires that the Governor shall make proclamation for thirty days prior to each general election, designating the offices to be filled at such election. The Supervisors of each county are required to give notice for at least ten days, by posting a copy of such proclamation at each place of holding the election in the county, and inserting the same in a newspaper, if one be published in the county. (See Statutes of 1855, page 160.)

" No such notice was or could have been given in this case, there not being thirty days intervening between the date of the letter of resignation and the day of election. The order published by the Supervisors of said county, being without authority of law, was a nullity. It is contended that the statute requiring proclamation to be made of the offices to be filled is merely directory, and that a failure to give such notice will not vitiate an election. The case of the People v. Brenham, (3 Cal. Rep. 491) is cited in support of this doctrine."

" The opinion in that case does not go to the extent claimed by counsel, and is not applicable to the case under consideration. I understand the decision to apply only to general elections, or elections to fill vacancies occasioned by the operation of law. The question involved was the validity of an election held under the charter of the city of San Francisco, to fill vacancies occasioned not by resignation, but by reason of the expiration of the term for which the incumbents were elected. The Court properly held, that the failure of the incumbent to give the required notice could not deprive the people of their right under the law to elect their officers. But it has nowhere been decided that such notice is not essential to the validity of all special elections. An election to fill a vacancy occasioned by the death or resignation of an officer is a special election, and the provision of our laws which requires such elections to be held at the same time and place with general elections does not change their character."

" It is essential to the proper exercise of the elective franchise that the voters should be informed of the offices in which vacancies have occurred, before each general election, in order that they may select fit and proper persons to perform the duties of such office."

McKune *v.* John B. Weller.

" The law gives notice of those offices which are vacant, by reason of the expiration of the term of the incumbent.  The law also provides that the Governor of the State shall, by proclamation, give notice of such vacancies as are occasioned by death, resignation, or removal from office ; and without this notice elections to fill such vacancies are invalid."  It will be seen that the late Chief Justice dissented, for the reasons expressed in the case of Brenham.  The inference would seem to be that he considered the doctrine of Porter's case as conflicting with those in Brenham's.

It is difficult to see the distinction in principle between this last case and that at bar.  If Monson had not resigned, he would have been entitled to hold for this short term—that is, for the period intervening between the election and January, 1859.  This period, indeed, was a portion of his term of six years, commencing from January 1st, 1853.  There was, then, a vacancy for this period.  This vacancy did not exist by operation of law, in the sense in which those words are used by the Court in the extracts just given.  And therefore, within the doctrine of that case, it was necessary for the public notice required by the statute to be given.  The argument that, as Botts was appointed to fill Monson's place, and as, by the Constitution, Botts' appointment could last only until the election, the vacancy left in the balance of the term, by operation of law, cannot be upheld.  In the first place, it cannot be assumed that all the voters of the county necessarily knew that Monson had resigned and Botts had been appointed to succeed him.  Even if the knowledge of the fact could be assumed in this particular case, it would make but little for the argument, for we are now discussing not an isolated case, but the *general principle.*  The law acts by general rules, not by exceptional or particular instances, and whatever may be the merits or demerits of the given *case*, they must yield to the rule which is to govern *all* cases arising under the law.  Thus, the very rule invoked here is that the people are presumed to know the law, and that it required an election to be held for this term in September, when it is quite evident that the people knew no such thing.  But still, we must give effect to such general principles of presumption, against our very strong assurance that in particular instances they were not true as matter of fact.  The

very reason why a proclamation is ordered to be made, is because it is supposed that the people would not otherwise know the fact proclaimed. We cannot presume, as matter of law, that they did know; still less can we presume they knew that an election was legal and proper in the face of the Governor's proclamation, which impliedly asserted the contrary, by giving notice that an election would be held to fill many offices, among which this was not. And the facts in the record go to show that the people generally did not so understand or believe.

We have thus reviewed the authorities cited, and they certainly fail to show that the position of the relator is sustained by any authority directly to the point, and of controlling weight. And we are entitled to conclude, from the ability and research of the counsel, that they have not been cited, because none such exist. We have examined with care the authorities within our reach, and have not been more successful than the learned counsel. We think, however, that the examination we have made shows the truth of Mr. Justice Wright's observations, that no authority can be found which authentically holds (for the doctrine of 3 Kernan is mere *obiter*) that an election held without notice, to fill a vacancy, is valid. The case of People *v.* Porter is the other way; and while the following cases do not expressly hold that the notice is essential, yet they evidently go, more or less directly, upon the idea that it is. (9 N. H. R. 524; *Ib.* 369; 23 Wendell, 9; 4 Pick. 257. See also, 8 Greenl.; 7 N. H.) While the principle which establishes the line of discrimination between acts directory and acts indispensable clearly indicates the correctness of the rule we have adopted — a rule supported by the clear and cogent reasoning of Mr. Justice Wright and those associates who agreed with him in the case of Cowles. Nor do we, as before intimated, see the force of the reasoning urged in favor of the contrary view. The argument *ab inconvenienti* is far from the most logical and satisfactory. It is easily answered, too, by corresponding evils on the other side of the proposition.

It is true, the Governor may prolong or increase his power by failing to make the proclamation. But this cannot be expected in these cases of vacancy, nor indeed, in any cases. It is not to be supposed

McKune *v.* John B. Weller.

that the Executive will prove derelict to his duty, especially for so small an object. The same argument would deny all but a scanty portion of his power. Under the pardoning power, he might, by a system of universal pardons, practically abrogate the whole criminal law; indeed, he might introduce general anarchy by refusing to execute the laws. The Legislature may dissolve the Government by refusing to levy taxes or to make appropriations, but these possible abuses of power are not reasons for refusing to give or acknowledge it. The evils on the other side are more probable of occurrence, and scarcely less injurious in character. If we hold to the principle that, whenever a vacancy happens, an election may be valid without notice to the people, frauds may and will be committed. This case may not afford an illustration, but others would. Where would be the limits of the *principle?* for we must have some general rule. It would apply to districts of more than one county as well as smaller districts —to cases of vacancy in other offices as well as those of Judges—and to Judges of the Supreme Court as well as of districts and counties. If death or resignation happens the day before the election, and when the fact was unknown—possibly kept concealed by design—all that it would be necessary for a man to do, would be to get a few votes—it matters not how few—and he could get the office, not only *without* but *against* the will of the great body of the people. The establishment of the principle would beget a laxity in the giving of this public notice of elections which might keep the people, in many instances, in ignorance of the offices to be filled at the various elections; and all this is to be done because of a legal presumption of " knowledge by the people of law and facts," which every man knows is not always possessed even by the best informed, of which this case is itself a sufficient illustration. We cannot hold as nugatory a plain statutory enactment upon reasons so unsatisfactory. We think we have shown that the definition given by the authorities of directory acts, namely, those which are not of the substance of the thing provided for, has no application to this statute ; that, on the contrary, the means, and only sure and efficient means, of bringing to the people authentic knowledge of their electoral rights and duties, is of the very substance of the election at which they are to exercise them; and that, if we hold

in cases of vacancies that the Act requiring this proclamation which gives this intelligence is merely directory, and therefore, to be followed or not at pleasure, we may, with the same propriety, set aside every provision of law regulating the time, place and manner of elections. We should thus hold that an election may be independent of legislative control, protection or regulation.

No censure is properly attributable to the Executive Department for its failure to insert this term in the proclamation; for the question as to the existence of this fraction of time as a period to be filled by popular election was a new, and by no means, a clear one; nor do we now decide that it did constitute such a term as to have called for this action.

This view being decisive of the relator's case, it is not necessary for us to pass upon the other questions raised in the case. Some of them arise in other cases before us, and will be disposed of when those causes shall be determined. Nor is it necessary to consider by what title the incumbent holds the office in question. It is sufficient that the relator has no title to it.

The judgment of the Twelfth District Court is affirmed.

Field, J.—I dissent.