STATE, DAVID P. MORGAN, PROSECUTOR, v. MAYOR AND COMMON COUNCIL OF GLOUCESTER CITY.

1. The provisions of the act entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876, is not operative in Gloucester City.
2. In elections of a special character, where time and place are not fixed by law, notice of the election must be given.

3. In such case, the direction to give notice is mandatory.
4. Notices not stating the place or places where polls would be opened are insufficient and election thereby rendered invalid.

On *certiorari* to review certain resolutions and ordinances of the common council of Gloucester City.

Argued at November Term, 1881, before Justices DEPUE, VAN SYCKEL and PARKER.

For the prosecutor, *James E. Hays* and *P. S. Scovel.*

For the defendants, *R. S. Jenkins* and *W. H. Jenkins.*

The opinion of the court was delivered by

PARKER, J.  The *certiorari* in this case brings before us resolutions and ordinances passed by the common council of Gloucester City, and also other proceedings had under color of an act of the legislature entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876.

On October 21st, 1880, the common council adopted a resolution that a ticket be prepared in conformity with the act of 1876, governing the erection of water works, to be submitted to the people at the then next annual election for their approval or disapproval.

On the 2d day of December, 1880, the common council passed another resolution, for holding an election on the water question on the 21st day of December, 1880, which resolution provided for the appointment of a committee to supervise and attend to all matters pertaining to said election.

On the 6th day of January, 1881, a resolution was passed ordering the clerks to have correct lists of the then late election made and placed on file.

A statement was made to the common council, by which it appeared that five hundred and eight votes were polled at the election of December 21st on the water question, and that

there was a majority of forty-four votes in favor of the erection of water works.

On March 2d, 1881, an ordinance was passed by the common council to construct water works, and a committee on construction appointed.

An engineer to superintend the construction of the works, at a salary not to exceed five per cent. on $60,000, (the estimated cost,) was appointed.

On the 3d day of March, 1881, a resolution was passed empowering and directing the committee to proceed forthwith to construct the water works in conformity with plans and estimates which had been furnished, to purchase such real estate as the committee should deem necessary, and directing that " water bonds " should be issued amounting to $60,000, to pay expenses of construction, &c., the bonds to be payable in successive years from 1891 to 1911, inclusive.

The charter of Gloucester City does not give power to the common council to construct water works, nor to issue bonds for such purpose.

It provides that the common council may borrow money on the faith of the city, on bond or other security, provided the sum borrowed shall never amount in all to more than two-thirds of the estimated tax to be levied and assessed in any one year; nor be made payable at any later period than thirty days after the time fixed for the collection of taxes.

The ordinance to construct water works and issue bonds was not, therefore, authorized by the city charter.

But it is claimed that the action of the common council in the premises was legally had under the provisions of the act entitled " An act to enable cities to supply the inhabitants thereof with pure and wholesome water," approved April 21st, 1876. *Pamph. L., p.* 366.

The sixteenth section of that act provides that it shall take effect immediately, but its provisions shall remain inoperative in any city until assented to by a majority of the legal electors thereof, voting at an election to be held in said city at any time to be fixed by the board of aldermen, common council

or other legislative body of said city, of which election the city clerk of said city shall cause public notice of the time and place of holding the same to be given, by advertisements, signed by himself, and set up in at least twenty public places in said city, and published in one or more newspapers printed therein, for at least six days previous to the day of such election ; and the clerk shall provide for each elector voting at such an election ballots, to be printed or written, or partly printed and partly written, on which shall be either the words, " For the adoption for this city of the provisions of an act entitled ' An act to enable cities to supply the inhabitants thereof with pure and wholesome water,' " or the words, " Against the adoption for this city of the provisions of an act entitled ' An act to enable cities to supply the inhabitants thereof with pure and wholesome water.' "

The same section of the act of 1876 provides, also, that the polls for such election shall be held at the usual places of holding the annual charter elections of said city, and shall be opened at seven o'clock in the forenoon and closed at seven o'clock in the afternoon.

It will be observed that the provisions of the act of 1876 remain inoperative in any city where an election has not been held and the act adopted by a vote of the electors.

The defendants must satisfy the court not only that an election has been held, but that it was legally noticed and conducted, before they can invoke the aid of the act of 1876 to authorize them to construct water works and encumber the city with debt. If not in conformity with law in any particular, the election must be declared void, and, together with all resolutions, ordinances and proceedings subsequent thereto and founded thereon, will be set aside.

The question at issue in this cause is whether there was a legal election, at which the provisions of the act of 1876 were adopted by the electors of Gloucester City. If such an election was not held, the act remains inoperative as to that city.

An election on the water question was first ordered by the common council to take place on the 2d day of November,

Morgan v. Gloucester City.

1880, being the day fixed by law for the general election in this state.  Before the day appointed, it was evident to those who were instrumental in agitating the question and having the time fixed, that there would be difficulty in casting the vote in reference to this special matter at the annual election. The election officers would probably not allow two tickets to be placed in the same box by one voter, and there had been no provision made for a separate box, nor for printing or writing the vote on the water question upon the tickets to be voted at the annual election.  In fact, this could not be done, for the clerk of the city was required by the act to prepare special tickets, to be voted separately, "for or against" the adoption of its provisions.  For these reasons, or from some other cause, the order for election of November 2d on the water question was treated by the common council as nugatory, although no resolution was passed countermanding it. The clerk did not prepare tickets for that election, but over one hundred voters signified their preference on the subject, in writing, at the bottom of the tickets voted for presidential electors, governor and other officers.  A decided majority of the votes thus cast was against the construction of water works.

Neither the prosecutor nor the defendants claim that the election of November 2d upon the water question was legally held.  It must be treated as a nullity, and can have no significance in this controversy, although the resolution of common council ordering it, and the failure of that body to revoke the order by like resolution, may have tended to confuse and complicate somewhat the questions which arise out of the subsequent election by keeping some voters from the polls who supposed the vote had already been taken on the subject.

But was the election of December 21st, 1880, valid ?  Was it legally noticed ?  The following is a copy of the notices which the clerk says he set up, viz. :

"Special Notice of Election.—I hereby give notice that an election will be held Tuesday, December 21st, 1880, for or against the adoption for this city of the provisions of an act

entitled 'An act to enable cities to supply the inhabitants thereof with pure and wholesome water.'

"B. S. SANDS, *Recorder*."

The notice does not state the day, nor even the year, of the approval of the act; it is not dated at Gloucester City, nor addressed in terms to the electors of Gloucester City; there is nothing in the notice to inform the reader for what city the election is to be held; it does not state at what place or places the polls will be, nor the time of opening and closing. These important particulars are left for inference, or to be ascertained by those who may happen to see the notice. The notice itself does not give the requisite information.

There are cases which hold that regular annual elections, fixed by law, are not vitiated on account of imperfection in notice, nor even for want of notice. But these authorities do not apply to special elections, where the law does not fix the time and place, and where the determination of these is committed to a municipal body, and notice thereof to be given by that body absolutely enjoined. In case of general elections, where time and place are fixed by law, the giving of notice is considered directory, but in elections of a special character, where the time and place are not fixed, the giving of notice is mandatory.

There are numerous decisions upon the validity of elections to fill vacancies in office which establish principles applicable to this case. In an election for an officer for a regular term, the not giving notice may not invalidate; for a contrary doctrine would put it in the power of a clerk, through ignorance, carelessness or design, to set aside a regular annual election, the place and time of which is fixed by law; but where the election is to fill a vacancy, the time and place for holding which is to be fixed by the chief executive or some other power, the notice is essential, not only as to the fact of the vacancy and the object of the election, but the time and place for depositing the ballots. In the former case, the right to

hold the election at the time and place fixed and between the hours designated, is derived from the statute; in the latter, it proceeds not only from the law, but also by virtue of the proclamation and notice, all of which are necessary to constitute a legal election. *People* v. *Benham*, 3 *Cal.* 477; *Mc-Kune*, v. *Weller*, 11 *Cal.* 49; *People* v. *Martin*, 12 *Cal.* 409; *Westbrook* v. *Rosborough*, 14 *Cal.* 180; *Foster* v. *Scarff*, 15 *Ohio St.* 532; *People* v. *Porter*, 6 *Cal.* 26; 1 *Dill. on Mun. Corp.* 259; *Cooley on Const. Lim.* 603.

There can be no doubt that notice of election in this case was necessary.

It was a special election, to be held under direction of the common council. Whether there should be any election on the subject, was at the option of the common council.

Where notice is required, it must be legal notice, and contain all that is essential. The law should be strictly pursued.

Sixty thousand dollars of bonded debt should not be fastened on this city at a special election, unless every legal requirement has been complied with.

The notice of the special election of the 21st of December is defective. If there was no other imperfection, the omission to name the place or places for holding the election is fatal.

The defendants contend that the sixteenth section of the act of 1876 requires the election to be held at the usual places of holding the annual charter election, and that therefore it was not necessary to specify the place or places in the notice. Under this section, the common council could not fix any other places; but the obligation of the city clerk to give public notice of those places, which another part of the same section directs, is imperative.

The act does not require that the election shall be where the last preceding charter election was held, but at the usual place or places for holding annual charter elections. How are voters to know where these places are, unless designated in the notice? The annual charter elections may have been held in different places, and there may be diversity of opinion among the electors as to which are the usual places for holding

annual charter elections. The charter of Gloucester City does not designate the places where the charter elections shall be held. The act incorporating the city, passed March 18th, 1874, directs that the charter elections shall be held where the common council may appoint. The language is, " that an election by ballot shall be held on the second Tuesday of March next, at the place of holding the last annual election, and *annually thereafter, at such place as the common council of Gloucester City may appoint.*"

It is clear that the notices of the election of December 21st posted by the clerk, should have designated the polling places. Such notices would have given information to the electors who saw them that the places named were the usual places of holding the annual charter elections, and would not have left each voter to determine that question for himself.

It cannot be urged in this case that, if the notice was not strictly legal, yet information that the election would be held, and the location of the polling places, was brought home to the great body of electors. There is no proof of this, but the contrary appears, if the number of votes cast be taken as a criterion. The election was of vast importance to the inhabitants, involving, as it did, the incurring of a large debt by a small community.

Under such circumstances, would there not have been a full vote if notice had been properly given ? The population of Gloucester City in 1880 was a little over five thousand. At the general election of that year, nearly one thousand votes were cast. At the special election of December 21st, only five hundred and eight votes were polled, of which two hundred and thirty-two were against the adoption of the provisions of the act of 1876. Soon after the election, more than six hundred voters within the city protested in writing against the scheme.

The notice of the special election was illegal, and therefore the election itself is invalid. On account of the irregularity and insufficiency of the notice, the election of December 21st, 1880, operated upon many as a surprise. That election is set

aside, and all subsequent resolutions, ordinances and proceedings founded upon it, being void, must fall.

The act of April 21st, 1876, entitled "An act to enable cities to supply the inhabitants thereof with pure and wholesome water," not having been assented to at a valid election, remains inoperative in Gloucester City.

The prosecutor is entitled to costs.