THOMAS GREENBANKS *v.* HENRY BOUTWELL.

*School District. School Meeting. Adjournment. School House. Hall. Taxes. Warning. Vote.*

A vote of a town, at a town meeting duly warned for that purpose, to annex one school district to another, has the effect to abolish the former and enlarge the latter, leaving the latter in continued existence as fully as before the transaction, without the necessity of new organization, or action on the part of either. Hence, meetings of the district so enlarged, held after such vote, in pursuance of a warning posted up prior thereto, and the action of such meetings, were of the same validity as they would have been if that vote had not been passed.

It is necessary in a vote of adjournment of a school meeting to a future day to state the hour for such adjourned meeting, otherwise the proceedings thereof will be invalid.

A school district having proceeded under invalid votes and erected a suitable school-house and thereby created an indebtedness, may legally vote and enforce the collection of a tax to pay such indebtedness.

Under §§ 43 and 44, ch. 22, Gen. Sts., it is competent for the district to adopt a school-house, by whatever means it may have come into existence, and equally so to vote to raise money by tax to pay for it.

It is lawful for a school district to provide such buildings and rooms including a hall as in the exercise of an honest discretion it shall judge that the interests of the district require for the purposes of its schools, and having reference to its condition and circumstances.

It is within the province of a school district, under the statute, to build a hall in connection with a school-house, designed to accommodate the schools and the inhabitants of the district for the purpose of examinations and exhibitions and such other things as are proper and customary in connection with district schools. But if the design was to use the occasion of building a school-house as a pretext for making a public hall for purposes disconnected with the schools of the district, then the district was doing what it had no lawful authority to do. While it would not be lawful for a district to make rooms, for the mere purpose of realizing profit by renting for pay, it would not be unlawful for the district to receive pay and profit for the use of rooms legitimately made for school purposes, when not in use for those purposes, and when they may be used for other purposes without detriment to the district in respect to its schools.

In the building of a school-house to serve present needs it would be proper to go beyond the immediate necessity and make reasonable provision for what the district seems likely soon to need for the service and accommodation of the increasing population and scholars.

Where the warning was " to raise money to defray expenses and pay our indebtedness " and the vote was " to raise $1.00 on $1.00 on the grand list to defray the expenses of the current year and the balance towards our indebtedness," the court cannot assume in the absence of any proof that the tax voted would raise more money than was needed to pay the expenses of the current year, so that there might be a balance to be applied on the unlawful debt, assuming that it was unlawful.

A tax voted at a school meeting held under a warning giving more than twelve days notice is invalid, for the reason that the meeting was not lawfully "appointed and notified." Gen. Sts., ch, 22, §§ 41-43. PECK, J., dissenting.

REPLEVIN, for four bales of flannel. Plea, the general issue. Trial by jury, May term, 1869, Windsor county, BARRETT, J., presiding. The plaintiff proved the taking and value of the property.

The defense was that said property was taken by the defendant as collector of School District No. 4 in Stockbridge, and the defendant introduced record testimony showing the following facts : April 1st, 1863, the clerk of said school district posted up a warning of a school meeting of that date, to meet at 7 o'clock P. M., April 8th, stating the place, containing the following articles among others :

" 2d. To see whether the district will vote to build a new school house.

"3d.   And if so, where the house shall be located.

"4th.   If necessary to raise money to build said house."

The meeting was held pursuant to the warning, and it was voted "to adjourn to meet again the 15th inst., at 9 o'clock A. M." Met pursuant to adjournment, and after appointing a committee to meet District No. 5 and ascertain if the latter would unite with No. 4, &c., voted "to adjourn to the 24th inst.," without specifying the hour for the adjourned meeting. Met again on the 24th inst., the voters of district No. 5 being present, and the two districts in unison voted "to build a new school-house with a hall," and appointed a locating committee. Voted "to adjourn to May 9th, 1863," without specifying the hour for the adjourned meeting. Met May 9th, 1863, and received the report of the locating committee, and voted "to authorize the committee on location to purchase the site," &c. Voted "to adjourn one week," without specifying the hour for the adjourned meeting. Met on the 16th of May, and voted to adjourn as before "until the 30th inst." Met on the 30th of May, and voted "to authorize the committee to purchase the land at the appraisal" of the selectmen, which had been made at $100. Voted "to raise fifty cents on the dollar on the grand list." Appointed a building committee, and voted "to adjourn to June 9th," not stating the hour for the adjourned meeting. Met June 9th, and voted "to give the building committee discretionary power to proceed and build a school-house, with a hall on the second floor, on the site purchased," &c. Adjourned *sine die.*

A warning of a meeting to be held April 26, 1864, addressed "to the inhabitants of school district No. 4," in Stockbridge, &c., was duly posted, containing an article "to raise money by tax or otherwise to defray the expense of building the new school-house." Met pursuant to warning and voted "to raise one hundred and fifty cents on the dollar of the grand list of said district towards defraying the expenses of the new school-house." Voted "to accept the plan for the new school-house presented by," &c. On the 1st day of Dec. 1864, at 7 o'clock P. M., at a meeting of district No. 4, held pursuant to a warning addressed to the legal voters in said district, it was voted, under articles in the warning to

27

that effect, " to raise one hundred and fifty cents on the dollar of the grand list of said district towards defraying the expenses of the new school-house." Voted " to have the committee procure such bell, * * * suitable for said house." Voted " to have the committee procure such seats and lights as they think proper and necessary for said hall." At a meeting duly warned and holden on the 23d January, 1865, it was voted to authorize the prudential committee " to rent the hall and all the rooms on the second floor to the best interests of the district," and " to hire money to pay the outstanding bills on said house."

And it was legally voted on several different occasions at meetings legally warned and holden, to raise money by a tax or otherwise to pay bills on said house.

On the 31st day of March 1868, a meeting of said district was held pursuant to a warning dated and posted-up March 16th, 1868, containing an article as follows : " To raise money to defray expenses and pay our indebtedness." Voted at said meeting " to raise $1.00 on $1.00 on the grand list to defray the expenses of the current year, and balance towards paying our indebtedness."

The plaintiff's tax, assessed under this vote, was $422.25, which he refused to pay, and the defendant as collector of said district distrained the said flannel. The plaintiff was an inhabitant of the district. The testimony on the part of the defendant tended to show that said district needed a new and larger school-house when the said house was built, that the population and children were on the increase and had been for some years, that there are now 97 scholars in the district and same number of voters. In said new school-house are two school-rooms, two closets and a wood-shed on the lower floor ; and a hall and two ante-rooms on the second floor ; that the hall is used for examinations, exhibitions and other purposes connected with the school, and is rented and used more or less for purposes not connected with the schools, viz : for concerts, festivals, religious meetings, lectures, courts, &c., rent amounting to about $150 annually, which goes into the treasury of the district ; that school meetings are called in this hall, there being no other room large enough in the district to accommodate the voters; that the district erected the building for

school purposes; that it was talked of by the district that the time would probably come when it would need that hall for school purposes; that there are two schools, primary and a higher grade, in the district; that for a third grade there is no other place in the district; that the story constituting the hall made the building cost $1000 more than a one story building; that the whole building cost about $7200, including land; that prior taxes had been paid; that the district is in debt for the house to some extent; that the house was completed in 1864; that a third school is needed in the district.

It was conceded that the rate-bill, on which the tax in question was sought to be collected, was correct. At a town meeting of legal voters of the town of Stockbridge, holden on the 14th day of April, 1863, in pursuance of a warning containing an article as follows: "To see if the town will vote to unite school districts Nos. 4 and 5 and constitute them one district, it was voted "to unite school district No. 5 to No. 4, and constitute them one district." Upon the evidence, the court, *pro forma*, directed a verdict for the plaintiff for nominal damages, to which the defendant excepted.

The case was argued at the Windsor county supreme court, February term, 1870; and was re-argued at the general term, November, 1870, on the last point in the following opinion of the court.

*J. Converse*, for the defendant, maintained that the posting of the notice 15 days before the meeting was to be held did not render the proceedings of the district void. The provision of the statute under consideration is to be regarded as simply *directory*. *People* v. *Runkle*, 9 John. R., 147, (157, 158); *Waters* v. *Danes*, 4 Vt., 601; *Johnson* v. *Dole*, 3 N. H., 328; Act 1827, § 11; 2d vol. Laws of Vt., p. 140; 1 Penn. State Rep., 224; *Gearhart* v. *Dixon*, (5 U. S. Dig., 736, pl., 96); *Goodwin* v. *Perkins*, 39 Vt., 598; *Walker* v. *Minor*, 32 Vt., 769, (773, 774); *Pond* v. *Negus et al.*, 3 Mass., 230, (232); C. S., 149, §§ 41, 42; do., p. 464, §§ 8, 9; *Dow* v. *Smith*, 6 Vt., 519, (520); *Jackson* v. *Young*, 5 Cow., 269; 25 Vt., 343; Slade's ed. Sts., p. 208, § 1;

*Holland* v. *Osgood*, 8 Vt., 276, (279, 280) ; *Warner* v. *Mower*, 11 Vt., 385, (394).

Had there been an intention to injure—had the thing been done in *bad faith*, either by the clerk or the district—it might merit a different consideration. But nothing of the kind is pretended, and certainly *the law will not presume it.* *Spalding* v. *Lowell*, 23 Pick., 71, (80) ; *Stevens* v. *Kent*, 26 Vt., 504, (511, 512) ; *People* v. *Peck*, 11 Wend., 604, (607, 610) ; *Soper* v. *Dis.* 9, 28 Maine, 193, (200–204.)

*Hunton & Gilman*, and *John S. Marcy*, for the plaintiff.

The opinion of the court was delivered by

BARRETT, J. In this case the question is as to the legality of a tax assessed by School District No. 4 in Stockbridge. It is claimed in behalf of the plaintiff to be illegal on several distinct grounds ; and as it has been fully and learnedly argued upon all of them, it seems proper, with reference to the particular interests of the parties, and it may be of service to others similarly conditioned, that this court should consider and decide the leading questions that have been made upon the several grounds of objection to the tax.

I. Had District No. 4 a legal existence at the time the tax was voted ? Prior to April 14, 1863, there had existed two contiguous school districts, numbered 4 and 5. On that day, at a town meeting duly warned for that purpose, it was voted to annex said district No. 5 to District No. 4. This was done conformably to ch. 22, § 20, Gen. Sts. The transaction was an altering of said districts as was found expedient, within the terms and intent of the statute ; and it was done by uniting District No. 5 to District No. 4. The effect was the abolishing of District No. 5, and annexing the territory of which it had been composed to District No. 4. This left District No. 4 in continued and effectual existence as fully, to all intents and purposes, as before that transaction. This action on the part of the town was definitive and effectual without any act or ceremony on the part of either of the districts as they had theretofore existed. Upon the passage of that vote there was no

longer in existence as a distinct and independent district what had, prior to that vote, been District No. 5. Only No. 4 existed, enlarged by the addition to it of what had been No. 5.

This is not a case of the formation of a *union* district, as contemplated by sec. 66, ch. 22. It is not a case of a district losing its organization, and requiring a re-organization, in the manner prescribed by the statute, in order to give it legal existence. District No. 4 was the same identical corporation after that vote that it was before,—embracing, it is true, some more corporators, but with no interruption of its corporate vitality or its corporate functions. We regard that action of the town as of the same character and effect as the voting of territory from one district and setting it to another, and the same as if, instead of designating the addition as they did, viz., as District No. 5, they had designated it by metes and bounds circumscribing the territory of No. 5, without mentioning the district by its former number. As District No. 5 it embraced certain defined territory ; and designating it in the vote by its number was but a short and convenient way of designating the addition thus made to District No. 4 by that vote.

Holding thus upon this point, we think it follows of course that the courteous diplomacy between the inhabitants of the territory of the two former districts was not requisite in order to render the vote of the town effective. That vote had wrought its effect and had annexed No. 5 to No. 4 before those civilities were exchanged. Nevertheless it seems to us wise and well that such course was taken, as indicating that the blending of the two was in pursuance of a harmony of views, and presaging a harmonious spirit for the future in the new relation created between those theretofore constituting two distinct corporate organizations.

Again, it follows from what has been said, that the warning posted up by the clerk of District No. 4, the 1st day of April, 1863, had as full efficacy after District No. 5 had been united to No. 4, as it would have had if no such annexation had been made by the town, and that the meetings held under that warning by adjournment from time to time, and the action of said meetings, were of the same validity after that vote of the town as they would

have been if that vote had not been passed. Of course, then, District No. 4, as enlarged by the vote of the town, could take action on the subjects embraced in that warning, to the same effect as if that warning had been duly posted after that enlargement had been made.

II. This brings us to the question made upon the omission, in the votes of adjournment, of any hour of the day for the meetings of the 24th of April, the 9th, 16th, and 30th of May, and the 9th of June, all of which were, by adjournments, under said warning of April 1st. It was decided in *Sherwin* v. *Bugbee*, 16 Vt., 439, and 17 Vt., 337, that the omission, in the warning of the school meeting, to specify any hour for such meeting, would render invalid the proceedings of a meeting that assumed to act under such ˙warning. In the case before us, the hour for the adjourned meeting on the 15th of April was specified. At that meeting it was voted to adjourn to the 24th of April, but no hour for the meeting was named in the vote. There is some plausibility in such case in the suggestion, that it is matter of fair implication and understanding that the adjournment was to the same hour of the future day as that fixed for the meeting at which the vote of adjournment was passed. Practically this might operate fairly enough as to all those who were at the meeting when the adjournment was voted, and participated in, or were cognizant of, that vote. Theoretically, it might be well enough to establish it as a rule of law, that when a meeting called at, or adjourned to, a particular hour, votes an adjournment, without naming any hour, it shall be taken to be to the same hour as that fixed in the warning, or in the last vote for adjournment in which the hour is named. We are inclined, on the whole, however, to think that the reasons arising from a consideration of the practical consequences likely to flow from the one rule and the other weigh most strongly in favor of putting the vote of adjournment upon the same ground, and under the same rule, as has already been established in the cases referred to above, as to the omission in the warning to name any hour for the meeting.

III. We come then to the question, whether the invalidity wrought by such omission in the proceedings of the meetings for

which the hour was not named, disenables the district to vote a lawful tax to pay for the building of the school-house in question; provided it shall turn out that said school-house is such as was within the prerogative of the district to build. In considering this question we do not take into account the question whether said school-house, as it was built, was outside of the lawful prerogative of the district, by reason of the hall as a part of it.

The fact is proved, and it is assumed by counsel on both sides, that the house, such as it is, has been constructed and is now owned by the district, and that on account of it the district has become indebted. It is not questioned that this has come to pass in pursuance of the action of those meetings that were held upon defective adjournments, and in reliance upon that action as being by meetings lawfully held. The site for the school-house was determined upon, the value of it was appraised, and it was purchased, and was paid for by money raised by a district tax. So the district has become the owner of the land by purchase and payment. This was clearly within the province of the district. It was as clearly within its province to construct a school-house upon it. This has been done, and there the house stands, the property of the district. Now, however defective in technical requisites the proceedings of the meetings may have been, in pursuance of and reliance on which this property has been acquired, or created, we have no doubt that the district may by its subsequent action at *legal* meetings supersede the vitiating effect of such defects in former meetings, and render itself legally bound to pay for that property, and may thereby become subjected to a debt for the payment of which a tax may be lawfully voted and assessed.

Now, treating the votes passed as to the new school-house at those unauthorized meetings as invalid and of no account, except as a part of the history of the inception, purpose and progress of the enterprise which resulted in the new school-house, and as showing the subject matter, and meaning, and legal operation of the vote of April 26, 1864, and of the subsequent votes relating to the same subject, we have no hesitation in holding that said last named votes constitute sufficient and valid action by the dis-

trict as such, to make the building of the school-house lawful, and to render it lawful for the district to raise money by taxation to pay for it. For illustration, let it be supposed that some individual had started the enterprise of building a new school-house, in anticipation that the district would want it ;—or let it be supposed that the prudential committee had done the same thing in expectation that the district, by subsequent action, would take it off their hands, and assume the completion of it, or would take it for a school-house when completed : there would seem to be no doubt that, when the subject matter had been rendered definite and certain, such action as is shown by the record of the meeting of April 26, 1864, and of subsequent meetings, would be entirely valid as against the members of the district, and entirely sufficient and lawful action by the district for providing itself with a school-house.

When the district is to get, and actually does get, the thing which it is both its province and its duty to have, it is equally its province and its duty to pay for it, and a vote to do so, by raising a tax, passed according to the requirements of the law, will have no lack of validity on account of the particular manner in which the thing came into existence. By § 43, ch. 22, Gen. Sts., school districts may raise money by tax " for the purpose of erecting, or to purchase or hire a building to be used as a school-house, and to purchase land for a school-house to stand upon," &c. That is the only provision of the statute as to the means by which the district may provide itself with a school-house as its own property. There is no provision requiring any preliminary votes that the district will or will not build a house. The next section provides for fixing the location of the house, and also that the district may appoint a committee to superintend the building, repairing or purchasing of a school-house. This last provision is merely permissive, and may be acted upon or not as the district shall determine by vote. Under the statutes thus referred to, it is clearly competent for the district to adopt a school-house, by whatever means it may have come into existence, and equally so to vote to raise money by tax to pay for it. And votes of the district so to do, passed at lawful meetings called and held for that purpose, will

be evidence of the fact of the district having become indebted for such house, which, as to subject matter, is a lawful indebtedness, and which the district may of course lawfully vote to raise money by a tax to pay.

IV. We next come to the question, whether the district had the lawful right to make such a house as was made. The subject and ground of objection against such right is the making of the hall. It is lawful for a district to provide such building and rooms as in the exercise of an honest discretion it shall judge that the interests of the district, in the matter of its schools and for the purposes of its schools, require. The law does not undertake to define the number or kind of rooms, or the particular use to be made of the rooms constituting a school-house, any more than it does the quantity and lay of the land " for a school-house to stand upon, and for yards, and for the necessary erection of outbuildings thereon, and for the accommodation of the same." These things have necessarily been left to the judgment and discretion of the district, fairly and honestly exercised, and having reference to the condition and circumstances of such district. While, therefore, for the legitimate and proper purposes of a district school, the district might make as part of its school-house more or fewer rooms, and for more or less use, and different rooms for different uses, nevertheless it would not be competent for the district, in connexion with the construction of a school-house, and as a part of the structure, to make lofts or rooms that were not designed nor needed for use in connexion with and for the accommodation of the schools of the district.

In the present case, if the hall was designed to accommodate the schools and the inhabitants of the district for the purpose of examinations and exhibitions and other such things as are proper and customary in connexion with district schools, and it was adopted in that view, the purpose was legitimate and within the province of the district to carry out by making the hall. On the other hand, if the view and purpose were not such, but the design was, to use the occasion of building a school-house as a pretext for making a public hall for town meetings, religious meetings, lectures, concerts, dances, picnics, and the other uses to which such

halls are ordinarily put, then the district was doing what it had no lawful authority to do. If again, the hall was designed and adapted to serve the interests of the district in respect to its schools, the making of the hall would not be rendered illegal if, when not wanted for school purposes, the district should permit it to be used for other purposes, having no relation to the schools. While it would not be lawful for the district to make lofts, or rooms, for the mere purpose of realizing profit by renting for pay, it would not be unlawful for the district to recive pay and profit for the use of rooms legitimately made for school purposes, when not in use for those purposes, and when they may be used for other purposes without detriment to the district in respect to its schools. We can readily conceive that the prospect of being able to derive income from such outside use of a hall, like the one in question, which may be really needed for the occasional accommodation of the schools, may properly operate as an influence upon the district in forming the determination to build one. While, but for such prospect, the district might feel too poor to make the outlay, still, with such prospect, it may regard it judicious to do so, and thus provide a desirable appendage to the school-house for the service of the interests of the schools, which otherwise the district would feel compelled to forego.

We think it best to say further, that in the building of a schoolhouse to serve present needs, it is entirely proper for the district to have a wise and prudent forecast as to its prospective needs; and in serving present needs, it would be proper to go beyond the immediate necessity, and make reasonable provision for what the district seems likely soon to need for the service and accommodation of the increasing population and scholars. Common providence and the obvious dictates of economy may often require this.

Without going more fully into the developement of this topic, and applying our views to the case as it is now before us, obviously this court could not undertake to decide as matter of law whether that hall was or was not within the legitimate province of the district to build. If for the decision of the case it were necessary to have that question decided, it would be necessary to remand it and have the question submitted to a jury under proper

instructions by the court. But if this court were to assume that the building of that hall was unlawful, and that the district could not vote a valid tax to pay for it, that ground of invalidity in the tax now contested is not shown to exist by the case as now made up. The tax was voted March 31, 1868. Article 4 of the warning is " To raise money to defray expenses and pay our indebtedness." The vote was " to raise $1.00 on $1.00 on the grand list to defray the expenses of the current year, and the balance towards our indebtedness." If it should be assumed that the *indebtedness* intended by that vote was in part or the whole for the unlawful building of that hall, still in order that that fact should affect the validity of that vote, it ought at least to be shown that the tax voted would raise more money than was needed to pay the expenses of the current year, so that there might be a balance to be applied on the unlawful debt. This is not shown in the case.

V. We come now to the question that was made the subject of reargument by order of the court. On that question, the tax is adjudged to be invalid, for the reason that the meeting at which it was voted was not lawfully " appointed and notified." The provision of the statute authorizing the voting of such a tax is § 43, ch. 22, Gen. Sts., the language of which is, " The several school districts may, by vote in a legal meeting, appointed and notified as required in the 41st section of this chapter, raise money by tax," &c. The requirment in § 41, is—" and the meetings shall be notified by posting up notices—at least seven and not more than twelve days before the time therein specified for the meeting."

In this case the warning is dated the 16th of March for a meeting to be held on the 31st day of March, 1868, the interval being fifteen days. It has been assumed by counsel on both sides, and Mr. Converse in his brief says, that " The record shows that the warning of the meeting was posted on the school-house the 16th of March, for the meeting on the 31st." It was the *annual meeting*, for which the day is fixed by statute. The only business which the statute prescribes for the annual meeting is to elect the district officers. § 42, ch. 22, provides " that the annual meeting may be appointed and notified by the clerk without any applica-

tion to him therefor by any of the voters of the district," such application being required in § 41 for all district meetings except the annual. But § 42 provides that "such annual meeting shall be notified in the manner provided by law for the notification of special school district meetings." That is tantamount to incorporating into said § 42 that part of § 41 that prescribes the notification for all meetings. Whatever the court might hold on a question as to the validity of the election of officers at the meeting warned, as this was, for other purposes than the election of officers, the annual meeting is *special*, and peculiarly so for the purpose of raising money by voting taxes, and in this respect stands on the same reason for the kind, and time, and manner of notification, as any other special meeting for the same purpose.

Upon this point the statute seems explicit and conclusive; for in § 43, before cited, the language is, "The several school districts may, by vote in a legal meeting, *appointed* and *notified* as required in the 41st section of this chapter, raise money by tax," &c. Though the annual meeting should be held to be legal for the election of officers if warned as the one in question was, still, by the express terms of the statute, the authority to vote taxes at that or any other meeting is indissolubly connected with the provision that the meeting should be appointed and notified as required in the 41st section. The suggestion, that the statute in this respect should be regarded as *directory* merely, seems to encounter rather a serious obstacle in that word ' *required*,' as used in § 43. The word certainly imports to any but a *technical* mind that the legislature understood the things provided in § 41 to be done to be things *required* by the law, things demanded, and not to be dispensed with; and this import of the word as thus used is plainly countenanced by the provision for a penalty for the neglect of that requirement. By the Rev. and the Comp. Sts., ch. 20, sec. 35, all meetings were to be called on the application of three or more legal voters. By the act of 1850, No. 40, being sec. 36, ch. 20 of Comp. Sts., *annual* meetings might be called without such application; but in every other respect they were to be called according to previous provisions of the law. By the act of 1851, No. 28, it is enacted: "It shall be the duty, in appointing and

notifying a meeting under the provisions of chapter 20, Comp. Sts., to give at least seven and not exceeding twelve days notice for such meeting "—and a penalty for violating the provisions of said act. Thus stood the statutes when, in 1861, No. 11, it was enacted that district school officers should be elected at the annual school meeting on the last Tuesday of March, said act to take effect on the last Tuesday in March, 1862 ; and thus stood the law till the General Statutes. By these, the law as it was when they went into operation is varied only by making the penalty for violating the law, as to the time prescribed for notifying school meetings, to depend on such violation being willful.

On the whole, therefore, it seems to the court that to hold the tax in question to be valid, as depending on the authority of the meeting to vote it, "appointed and notified" as it was, would be in disregard of the express language and plain intent of the statute in that respect. This being so, though we may regret consequences that may result, we are not at liberty to permit those consequences to control the judgment to be rendered.

The judgment of the county court is affirmed,—Judge PECK dissenting on the last point.