ABNER C. HARDING

*v.*

THE ROCKFORD, ROCK ISLAND AND ST. LOUIS RAILROAD COMPANY *et al.*

1. MUNICIPAL SUBSCRIPTION *in aid of railroad—strict compliance.* Municipal corporations, such as counties, being created for governmental purposes, where they exercise the function of subscribing in aid of railways under statutes, the power to do so must not only be clearly conferred, but strictly pursued.

2. SAME—*notice of election.* Where county authorities are authorized to subscribe, in behalf of their county, to the capital stock of a railroad company, upon an election resulting in favor of the same, if the general or special statute controlling the election requires the publication or posting of a notice thereof for thirty days prior to the holding of the election, and this is not done, the election will be invalid, and the expression of the will of the voters thus obtained will confer no authority upon the board of supervisors either to make the subscription, or to issue the bonds of the county.

3. Where an act of the legislature authorized any county through which a certain railroad might pass, to subscribe to its capital stock to a limited amount, upon a favorable election, and required thirty days prior notice to be given, a later act was passed authorizing subscriptions under certain other limitations, which also required the submission of the question to a vote of the people, " in such manner as the county authorities " might determine, but specified no particular time as to notice of the election : *Held,* that the latter act did not repeal, by implication, the prior acts requiring thirty days notice of an election, to be given; and that the words *"in* such manner as the county authorities may determine," in the last act, did not necessarily refer to the time of the notice, but had relation to the conditions to be inserted in the notice as to the amount of the subscription, the time the bonds should run and their rate of interest.

4. But even if the board of supervisors had the power to fix the time of the notice of the election, it could only do so by an order or resolution entered upon the record. And where the board, in ordering such an election, fixed no time for such notice, but merely directed that it should be conducted according to law, they failed to exercise the power conferred, and if the prior act was repealed, the act of 1849, which required thirty days notice, governed, and there not being notice of thirty days prior to the election, it was invalid, and conferred no power upon the board to make the subscription.

5. STATUTES—*repeal by implication.* The presumption of repeal by implication should never be indulged if the two acts can be reconciled. There must be a total repugnancy. A repeal by implication has never been favored by the courts, and ought never to be allowed when it would lead to an absurd consequence, and stamp the legislation as wholly unreasonable, if such results can be avoided.

6. Where the legislature, at the same session, passed two acts authorizing municipal subscriptions in aid of a railroad company, in the first of which the amount of the subscription was limited, and the bonds might be issued maturing in thirty years, while in the second there was no limitation as to the amount, and the bonds were required to mature in twenty years: *Held,* that the latter act, by implication, repealed the prior one, as to the limitation of the amount of subscription, and as to the length of time the bonds might run before their maturity, there being a palpable repugnancy to this extent.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. HARDING & McCOY, for the appellant.

Mr. CHARLES M. OSBORN and Mr. S. W. FULLER, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

This bill was filed to enjoin the county of Warren from issuing its bonds in aid of the railway company.

An injunction was issued, which was dissolved, and a decree was rendered dismissing the bill and awarding damages against the complainant to the amount of $13,000.

The county had no authority to issue bonds to the railroad company until the question had been submitted to the legal voters of the county, in conformity to the law, and been sanctioned by them.

There was an election, and a majority of the voters voted in favor of subscription; but thirty days notice of the election was not given, either by publication in a newspaper or otherwise.

The only question we propose to consider is, was the omission to give notice for thirty days fatal to the rightful exercise of the power to issue the bonds?

If any general or special statute which controlled the election required the publication or posting of a notice for thirty days prior to the holding of the election, and this was not done, then the election was invalid, and the expression of the will of the voters thus obtained conferred no power upon the board of supervisors either to make the subscription or to issue the bonds. Such municipalities were not created with the view to engage in commerce, or to aid in the construction of railways, but for governmental purposes only. When they exercise the functions given by the statutes under consideration, the powers granted must not only be clearly conferred, but strictly pursued. If the mode prescribed for carrying into effect the right to issue bonds is not complied with in all material matter, then the bonds should not be issued; and thus the taxpayer will be exempt from the imposition of illegal taxes and a grievous burden upon his property.

These principles have been so elaborately discussed and fully settled by this court that we need only to refer to some of the cases: *The People* v. *Tazewell County,* 22 Ill. 147; *Fulton County* v. *The Mississippi and Wabash Railroad Co.* 21 Ill. 373; *Supervisors of Schuyler County* v. *The People,* 25 Ill. 181; *Supervisors of Hancock County* v. *Clark,* 27 ib. 305; *Marshall County* v. *Cook,* 38 ib. 44; *Wiley* v. *The Town of Brimfield,* 59 ib. 306.

There were three acts passed at the same session of the legislature, which have some reference to the issue of bonds in aid of the construction of this railroad. It is, however, strenuously urged that the act of March 26th, 1869, is not applicable to the election and proceedings in the county of Warren; and that this county is carefully excluded from the provisions of the act. This we shall concede.

The other two acts are of the dates, respectively, of March 4th and March 25th, 1869. The first is an act amendatory

of the charter of the railroad company; the other is "An act to authorize certain counties and towns therein named to subscribe stock in railroad companies;" and it authorizes the counties of Rock Island, Mercer, Warren, McDonough, Schuyler, Cass, Scott and Greene, only, and the several towns therein, to subscribe to the capital stock of any railroad company, when the road should pass in whole or in part through them. Though the act does not name the railway company which was made a defendant to the bill, yet we gather from the record that the defendant company does run its road through these counties, and that the bonds, the issue of which was enjoined, are for its benefit, and that it claims them by force of the provisions of the act of March 25th, and the election which, it is insisted, was held under it.

The stress of the argument in behalf of the railroad company is, that the several provisions of the act of March 4th, in relation to subscription to the capital stock of the company, an election, and the issue of bonds, are repealed by the later act; and that therefore the act of March 25th must control as to the requisite notice of the election.

There are numerous objections to this position. The later act contains no express repeal, and the repeal of the first act can only be implied from the repugnancy between the two statutes.

The intention of the legislature must always be presumed to be in consonance with reason and good discretion, and a repeal by implication, or a particular construction, should never be indulged, which would lead to an absurd consequence, and stamp the legislation as wholly unreasonable, if such results can be avoided.

The act of March 4th authorized any county through which the road might pass, to subscribe to the capital stock of the company, to a limited amount; provided for an election, and required a notice of it to be given for thirty days. Under this act the subscription could be made by the county court or board of supervisors.

The act of March 26th was "An act to empower county courts, and the corporate authorities of cities and incorporated towns, to subscribe to the stock" of the same company. It also provided that no subscription should be made until the question should be submitted to a vote of the legal voters, and that no such election should be held until at least thirty days notice of the election should be given in the manner provided by law.

The act of March 25th also required the submission of the question of subscription to the vote of the people of the county, " in such manner as the county authorities" might determine, but specified no particular time as to notice of the election.

The position assumed is that, as Warren county was governed by the township organization law, therefore the act of March 26th could have no application to the action of the board of supervisors of that county; and that the notice of the election, required by the act of March 4th, was abrogated by the subsequent act of March 25th; therefore the time of notice of the election in Warren county was left to the discretion of the board of supervisors.

From such a line of argument absurd consequences follow, and unwise, inconsistent and unreasonable legislation results.

By the first in date of the series of acts of the same session, where a limited amount of stock was authorized to be subscribed, and a vote to be taken before subscription, the precaution was used to require thirty days notice of the election. When, by the act of March 26th, an amount not exceeding $3000 per mile was authorized to be subscribed, upon a favorable vote, in counties not having township organization, again thirty days notice was required to be given of the election.

The act of the 25th of March, if to be considered alone, did not require any specific notice, but left the whole matter to the pleasure of the corporate authorities in certain enumerated counties.

Wherefore such discrimination as to different classes of counties? Wherefore such safeguards in the one case, and,

virtually, none in the other? Wherefore in one county require a particular notice, longer than usual in ordinary elections, and in another leave the whole matter of notice to the arbitrary discretion of the county authorities?

Such absurdities should not be imputed to the legislature, if the acts are susceptible of a different construction, which will alike maintain the wisdom of the legislation, and protect the people from uncontrolled power.

Is, then, the proviso to section 6 of the act of March 4th, (3 Vol. Pri. Laws 1869, p. 343,) as to the notice of the election, repealed by section 10 of the act of March 25th? (Vol. 3, Private Laws 1869, p. 370.)

The first act, prior to subscription, required an election in conformity to the laws in regard to ordinary State, county, city or town elections, and a notice to be given of it for thirty days. Section 10 of the later act also required an election on the question of subscription, and concludes as follows: "Such question shall be submitted in such manner as the county authorities may determine as to the county, or as the town auditors may determine as to towns."

According to both acts, the denomination of the bonds to be issued was not to be less than $100, and to bear interest not to exceed 10 per centum per annum; but in the first the amount of subscription was limited to $100,000 by any county, town, etc., and in the later act the amount was unlimited; and in the one the period for which the bonds might run was thirty years; while in the other the period was only for twenty years.

What was the mischief intended to be remedied by the subsequent enactment? What change was evidently made?

The evils, manifestly, intended to be removed were the limitation imposed as to the amount of subscription, and the time for the maturity of the bonds, as provided in the act of the 4th of March.

From a close analysis of the two acts, it is apparent that the amount of subscription to be voted upon was to be left

unrestricted, and that the bonds should mature in at least twenty years.

To this extent there is a palpable repugnancy between the two enactments, and a repeal of the inconsistent provisions contained in the former act, by necessary implication. But the question as to the repeal of the provision for a notice of the election is altogether a different one. In the first act a specific notice was required, and the number of days for which it should be given, and the manner of its publication, were plainly fixed. In the subsequent act there is nothing necessarily antagonistic to these requirements. The only words inconsistent with the continued existence of the first provision are the following: "Such question shall be submitted in such manner as the county authorities may determine." They do not, by necessity, refer to the time of notice; and as both acts have reference to the same subject matter, and are for the benefit of the same railway, the language of the 10th section may properly, and should, be construed to have relation to the condition to be inserted in the notice as to the amount of subscription, the period in which the bonds would mature, and the rate of interest. Hence, when the board of supervisors adopted its resolution, and made the amount of subscription $200,000, the time in which the bonds should be redeemable, twenty years, and named the day of the election, and the rate of interest eight per cent, it fixed the manner of submission. These matters were left to the discretion of the board, but the law had settled the time for which the notice should be given.

When we consider the whole legislation upon the subject of granting aid to this railway, and the care with which the legislature had guarded the people from imposition, in requiring notice of all elections to be given for a sufficiently long time, and in providing for its due publication, it is a most unreasonable conclusion that all these safeguards were removed, and the taxpayers of Warren county were left entirely to the mercy of the county authorities.

If the manner of submitting the question of subscription included the whole subject, the time, as well as the mode, of giving the notice, then the time of the notice was left to the arbitrary discretion of the board of supervisors. Any notice, even one day, would fulfill the requirement of the law, and the people of the county might be involved in a burdensome debt, without their knowledge, by a small minority of the voters.

But concede that the board of supervisors, by virtue of the 10th section of the act of March 25th, had control of the whole subject, what action did it take? It will certainly not be contended that it had power to order and hold an election without any notice to the electors. This would have been the veriest mockery, a delusion practiced under color of law.

If the whole subject was committed to the board, then the duty was imposed to determine the time for which the notice should be given, and to direct its publication. This it could do only as a board, by an order or resolution entered upon the record.

Upon an examination of the proceedings of the board, it will be found that no mention is made of any notice, in terms. The day of election was fixed, and then it was ordered that the election be conducted according to law. After the adoption of the resolution, thirty days notice might have been given of the election prior to the day fixed for holding it. The board, then, did not provide for any notice, or the time of its publication. The power conferred was not exercised. The manner of submission, so far as time was concerned, was not determined. It was merely ordered that the election should be conducted according to law.

If the special act of March 4th was repealed, what law would govern? We do not think that the laws in regard to ordinary State, county and town elections would control. The general law of 1849, in relation to subscriptions for shares of stock in railroad companies, would be more strictly applicable,

7—65TH ILL.

because it is in reference to the same subject matter. Sess. (second) Laws 1849, p. 28. This general law requires notice for thirty days to be given of all such elections.

The presumption of repeal by implication should never be indulged, if the two acts can be reconciled. There must be a total repugnancy. The doctrine has never been favored by the courts, and should not be applied in this case.

We are of opinion that the proviso to section 6 of the act of the 4th of March is not abrogated by section 10 of the subsequent act. Their reconciliation in the manner we have attempted will best subserve the public good; and the validity of both, thus reconciled, will make the legislation more in accordance with reason, shield the legislature from an absurdity, and prevent serious consequences.

As the election was invalid for want of sufficient notice, there was no power to make the subscription, and none was conferred by the vote to issue the bonds.

The decree dissolving the injunction and assessing damages against the complainant, and dismissing the bill, is reversed, and the cause remanded, with directions to grant the prayer of the bill.

*Decree reversed.*

Mr. CHIEF JUSTICE LAWRENCE did not sit in this case.