## STATE *vs.* HUGH J. CARROLL.

The provisions of Pub. Laws R. I. cap. 474, § 14, of March 27, 1885, incorporating the city of Pawtucket, which require seven days' notice to be given of an elective meeting, apply to all elections of city officers.

An elective meeting for the choice of a mayor, held at the time fixed by the statute, resulted in no choice. A second meeting also resulted in no choice. Both of these were duly notified. A third was ordered December 3d, by the board of aldermen, to take place December 5th, and the city clerk, December 4th, issued his warrant for this meeting.

On *quo warranto* against the mayor declared elected at this meeting of December 5th.

*Held,* that the meeting was not legally notified.

*Held,* further, that notwithstanding this, if on the return of the writ of *quo warranto* it should appear that a full expression of the popular wish had in fact been given at the meeting of December 5th, the election would be sustained.

The purpose of notification is simply to secure such an expression.

In the case at bar, a demurrer was filed to the information.

*Held,* that the demurrer should be overruled.

In *quo warranto* the respondent must aver and prove the facts on which his title to the office claimed depends. It is enough for the information to aver that he holds it without legal authority.

The provisions of Pub. Laws R. I. cap. 474, § 14, of March 27, 1885, incorporating the city of Pawtucket, which require seven days' notice to be given of an elective meeting, are directory and not mandatory.

These provisions being directory and not mandatory, an elective meeting held without the seven days' notice, and after two previous meetings had resulted in no election, does not fall under the condemnation of Pub. Stat. R. I. 238, § 4.

Such a meeting is good notwithstanding the defective notice, if it appears that the electors had full knowledge of the meeting, and that a full expression of the popular will had been obtained.

QUO WARRANTO. On demurrer to the information, and subsequently on demurrer to the answer.

This was an information filed by the Attorney General on the relation of certain qualified electors of the city of Pawtucket against the respondent to test his title to the office of mayor of the city.

The respondent demurred to the information.

Pub. Laws R. I. cap. 474, of March 27, 1885, incorporating the city of Pawtucket, contain the following provisions : —

SECT. 14. Elections of city and state officers, including justices of the peace, members of Congress, and presidential electors, shall be made in ward meetings, which shall be warned and notified by the city clerk, who shall cause notices, stating the time and place for such election and the officers to be chosen, to be posted up at

least seven days before such election, in three public places in each ward respectively, and shall give such other notice thereof as the city council shall order; and the place for holding such election shall be determined by the board of aldermen : provided that the first election under this act shall be warned and notified by the clerk of the town of Pawtucket in the manner hereinbefore provided.

SECT. 16.  *Clause* 1.  All the ballots cast as aforesaid shall be sorted, counted, and certified by the warden and ward clerk, and sealed up and directed in open ward meeting to the city clerk, and be forthwith delivered to him, who shall deliver them to the board of aldermen, and they shall be opened and counted by said board within forty-eight hours after the closing of the polls ; and said board shall forthwith declare the result of such election, and shall cause written notices to be given to such persons as may have been elected to said offices.

*Clause* 2.  In case of failure to elect any officer under the provisions of this act, or in case any officer shall die before qualifying, or shall neglect to qualify, or shall refuse to accept the office to which he is elected, the board of aldermen shall order the city clerk to issue his warrant for another election to fill the vacancy, and so on from time to time until all of such offices shall have been filled ; and if a vacancy shall occur by death or otherwise in the office of mayor, or in the board of aldermen, the board of aldermen shall order the city clerk to issue his warrants for an election to fill the vacancy.    But in case no election has been made of any one or more of the common council at the time of the organization thereof on the first Monday of January in each year, or if a vacancy shall occur in said board at any time during the year, said board shall order the city clerk to call a meeting to fill such vacancy, and he shall call such meeting accordingly ; provided, however, that at the first election held under this act, before the organization of the government under the same, the town council shall do all things that are by this section authorized to be done by the board of aldermen, and the town clerk shall do all things that are by this section authorized to be done by the city clerk.

*February* 6, 1892.  MATTESON, C. J.  This is an information,

in the nature of a *quo warranto*, to try the title of the respondent
to the office of mayor of the city of Pawtucket. It sets forth that
ward meetings for the election of city officers were legally held in
Pawtucket on December 2, 1891; that the ballots were legally
returned and counted by the board of aldermen on December 3,
1891, within forty-eight hours after the closing of the polls, in
accordance with the provisions of Pub. Laws R. I. cap. 474, § 16,
clause 1; that the board of aldermen forthwith, on the date last
named, declared the result of the election of mayor to be as fol-
lows: " Hugh J. Carroll has 2,111 ballots; Albert R. Sherman
has 1,557 ballots; David J. White has 575 ballots; Charles F.
Burnham has 1 ballot; Frederic C. Sayles has 1 ballot, and there
is no election; " that thereupon the board of aldermen, on the
same day, ordered the city clerk to issue his warrant for another
election, to be held on Saturday, December 5, 1891; that there-
upon the city clerk, on December 4, 1891, issued his warrant for
the election so ordered to be held on December 5, 1891, and warned
and notified the electors of the city of Pawtucket to assemble in
ward meetings on December 5, 1891, at eight o'clock, in the
various ward rooms, and afterwards, in the afternoon of the same
day, caused notices stating the time and place of such election, and
the officer to be chosen, to be posted in twenty public places in the
city. The information also goes on to state that, in pursuance of
the action of the board of aldermen aforesaid, a pretended election
was held on December 5, 1891, and that the respondent received a
majority of all the ballots given in for mayor at such pretended
election, and avers that said election was illegal and void; and
that the respondent, on January 4, 1892, entered upon and used
and exercised, and from that time to the filing of the information
has continued to use and exercise, without lawful warrant, the
office of mayor of said city, etc.

The respondent has demurred to the information.

Pub. Laws R. I. cap. 474, of March 27, 1885, is entitled " An
Act to establish the city of Pawtucket." Section 14 of that act
provides that " elections of city and state officers . . . shall be
made in ward meetings, which shall be warned and notified by the
city clerk, who shall cause notices, stating the time and place for
such election and the officers to be chosen, to be posted up, at least

seven days before such election, in three public places in each ward respectively." . . . Section 16, clause 2, of the same act provides that " in case of failure to elect any officer under the provisions of this act, or in case any officer shall die before qualifying, or shall neglect to qualify, or shall refuse to accept the office to which he is elected, the board of aldermen shall order the city clerk to issue his warrant for another election to fill the vacancy, and so on from time to time until all such offices shall have been filled."

The relators contend that § 14 applies to all elections held under § 16, clause 2, and hence that the ward meetings for the purpose of holding such elections should be warned and notified by the city clerk, by causing notices, stating the time and place of such elections and the officer to be chosen, to be posted up at least *seven* days before such elections, in three public places in each ward respectively; and that, as the order of the board of aldermen on December 2, 1891, fixed the time of holding the election in question for December 5, 1891, only three days afterwards, so that the city clerk could not post the notices seven days before the election, in three public places in each ward, the election was illegal and void.

The respondent on the other hand contends that § 14 applies only to first elections, but does not extend to a second or adjourned election held in case of a failure to elect at the first or prior election; that such second election is, in effect, merely a second balloting in continuation of the first election.

We find nothing in the statute to warrant such a construction of the words " another election " as the respondent seeks to give them. It contains no provisions such as are contained in Pub. Stat. R. I. cap. 10, §§ 18, 22, whereby an election stands adjourned to a subsequent day, and whereby, in case of a failure to elect on the first balloting, a warrant is issued by the mayor, if the election is held in a city, to the wardens of the several wards, or by the president of the town council if the election is held in a town divided into voting districts, to the moderators of the several district meetings, directing the election to proceed on the day to which the meetings stand adjourned; nor does it contain any provision authorizing an adjournment or continuance of the election on a sub-

sequent day. It evidently contemplates that when the votes have been given in, returned, and counted, and the result declared, that the election is at an end. In case of a failure to elect at that election, the board of aldermen are directed to order the city clerk to issue his warrant for *another* election, that is, a new election. This view is strengthened by the consideration that the direction to order the city clerk to issue his warrant for another election is not limited simply to the case of a failure to elect, but extends also to the case of an officer who shall die before qualifying, or shall neglect to qualify, or shall refuse to accept the office to which he is elected, in which cases, unquestionably, the election must be a new and independent election.

If the election so directed to be ordered is a new and independent election, and not a mere continuation or adjournment of the former, as we feel constrained to hold, we think it must also be held that the provisions of § 14, which purports to regulate the manner of holding elections, that is, all elections, none being excepted from its operation, of city officers, and prescribes the notice to be given, apply to elections directed to be held by § 16, clause 2, and consequently to an election held in case of a failure to elect an officer at a prior election.

Section 14, then, being applicable to an election held under § 16, clause 2, the question arises whether the want of the notice prescribed by § 14 was sufficient to render the election in question void. When the time and place of holding an election are fixed by law, the rule is, that an omission to give the prescribed notice will not invalidate the election. In such a case the provision for notice is considered as directory and not mandatory. The time and place being appointed by law, the elector is bound to take notice, and therefore derives notice from the statute itself. The purpose of the prescribed notice is to give greater publicity to the election, but the authority to hold it comes from the statute. *The People* v. *Cowles*, 13 N. Y. 350; *The People* v. *Brenham*, 3 Cal. 477; *State ex rel. Leal* v. *Jones*, 19 Ind. 356; *The People* v. *Hartwell*, 12 Mich. 508; *Dishon* v. *Smith*, 10 Iowa, 212; *State ex rel. Peacock* v. *Orvis*, 20 Wisc. 235; *State ex rel. Lutfring* v. *Goetze*, 22 Wisc. 363; *State* v. *Skirving*, 19 Neb. 497; Cooley Constit. Limit. 759, 6th ed. Time and place, however, are gen-

erally regarded as of the substance of an election, and hence it is essential, to give validity to an election, that the electors should have notice. In *McKune* v. *Weller*, 11 Cal. 49, it was held that the statute requiring the governor to issue his proclamation in case of a special election to fill a vacancy, occurring not by expiration of the term, but by death or resignation before the term expired, was mandatory, and hence that the proclamation was an essential prerequisite to such an election. On the other hand, it has been held in numerous cases that if the electors in fact have notice, and there is no reason to believe that any considerable or material number have been deprived of the opportunity to vote by the omission to give the statutory notice, and as large a vote has been polled as is usual in such elections, the election will be sustained, although the statutory notice has not been given. *Wheat* v. *Smith*, 50 Ark. 266, 277 ; *Commonwealth* v. *Smith*, 132 Mass. 289 ; *State ex rel. Peacock* v. *Orvis*, 20 Wisc. 235 ; *State ex rel. Chase* v. *McKinney*, 25 Wisc. 416 ; *Dishon* v. *Smith*, 10 Iowa, 212 ; *State* v. *Skirving*, 19 Neb. 497 ; *State* v. *Thayer*, 47 North Western Reporter, 704.

The case at bar, however, is a very different case from *McKune* v. *Weller, supra*, even if the election is to be considered as a special election. In that case the election was to fill a vacancy occurring during the 'term of office, and there was therefore no presumption that the voters had knowledge of it, and it was therefore necessary that the notice should be given to bring the matter to their attention. The election in the present case was not to fill a vacancy occasioned by the death or resignation of the incumbent of an office during the term, but an election because of a failure to elect at a prior election, of which presumably the prescribed notice had been given. As the law fixes the time of holding the election as on the Tuesday following the first Monday in November,[1] we may also presume that an election was held on that day, of which the prescribed notice had been given, and which resulted, as did that of December 2d, in a failure to elect. It may easily be imagined that, after two contested elections which resulted in failures to elect, political feeling and enthusiasm would be at a high pitch,

---

[1] By Pub. Laws R. I. cap. 637, § 1, of May 5, 1887.

and that electors of every shade of opinion would be on the alert, and that, therefore, a less notice than that prescribed by § 14 would amply suffice to obtain a full expression of the popular will. As the only purpose of giving notice is to obtain such an expression, we are not prepared to hold that, if it should be made to appear by return on the writ that the electors had full knowledge of the election held on December 5, 1891, and that a full expression of the popular will had been thereby obtained, that the election so held was void, notwithstanding the fact that the prescribed notice was not given. In *Wheat* v. *Smith*, 50 Ark. 277, the court remarks: " When a special election to fill a vacancy is ordered, there is no presumption that the voters know the date fixed by the writ of election, and they must be informed of it. But the established rule is, that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of electors is sufficient. The question in such cases is, whether the want of statutory notice has resulted in depriving sufficient of the electors of the opportunity to exercise their franchise to change the result of the election." As the case is before us only on demurrer to the information, we have no facts except such as are set out in the information, and the information shows no facts in regard to the election of December 5, 1891, except that the respondent received a majority of the votes cast.

The respondent takes the point that, even if it be held that the board of aldermen did not have power to fix their own time for holding the election, the election was valid because in conformity with the general law governing elections. We do not see that the general law has any application. The office of mayor is a city office. The general law does not cover the election of mayor. The only authority for the election of that officer is to be found in the charter of the city.

The respondent also urges in support of his demurrer, that it does not appear in the information that there was not a full and fair election, and that, even if the notice was irregular, it did not vitiate the election, in the absence of fraud, or of any claim that electors were deprived of their votes by such irregularity. The objections are based upon an erroneous conception of the rule of pleading, which, in informations in the nature of a *quo warranto*,

differs from that in ordinary cases. In such informations it is only necessary to aver that the respondent is in possession of the office without lawful authority. It is for the respondent, who is called upon to show by what authority he holds the office, to aver the facts upon which his title to it depends. High on Extraordinary Legal Remedies, §§ 712, 713, 716, and cases cited. *State* v. *Kearn, ante,* p. 391.

The demurrer to the information is overruled.

*Nicholas Van Slyck, James M. Ripley & Cyrus M. Van Slyck,* for relators.

*John M. Brennan, Charles H. Page, George J. West, Thomas W. Robinson & Claude J. Farnsworth,* for respondent.

After the demurrer to the information had been overruled, the respondent, February 20, 1892, filed his answer, and the relators demurred to the answer.

*July* 23, 1892. MATTESON, C. J. After the overruling of his demurrer, the respondent filed a plea in answer to the information, and to this plea the informant has demurred. The first question argued at the hearing on the demurrer is, whether the provision contained in Pub. Laws R. I. cap. 474, § 14, of March 27, 1885, with reference to notice, is to be regarded as mandatory, or merely as directory. The section provides that "elections of city and state officers . . . shall be made in ward meetings, which shall be warned and notified by the city clerk, who shall cause notices, stating the time and place for such election and the officers to be chosen, to be posted up at least seven days before such election, in three public places in each ward respectively." Section 16, clause 2, of the same chapter provides that, "in case of failure to elect any officer under the provisions of this act, . . . the board of aldermen shall order the city clerk to issue his warrant for another election to fill the vacancy, and so on from time to time until all such offices shall have been filled."

Ward meetings for the purpose of electing a mayor were held on the Tuesday following the first Monday in November, 1891, the date fixed by Pub. Laws R. I. cap. 637, § 1, of May 5, 1887, as the time for the election, and again on November 18, 1891, December 2, 1891, and December 5, 1891. At the first three of these elections neither of the candidates received a majority of the votes

cast, and there was, consequently, a failure to elect. At the fourth election the respondent received a large majority of the votes cast and was declared elected, received a certificate of election, took the oath of office, and is now acting as mayor.

Notice of the first three elections was regularly given in accordance with the requirement of § 14; but the date fixed by the order of the board of aldermen for holding the fourth election being only three days subsequent to the one immediately preceding, it was impossible for the city clerk to comply with the provision of § 14 to give at least seven days' notice. The notices were in fact posted on December 4th, the day preceding the election. The time for this election was fixed by the board of aldermen in the full belief that they had authority so to fix it, and under a mistaken idea that the provision of § 14 did not apply to an election under § 16, clause 2, in case of a failure to elect at a prior election.

Counsel for the relators concede that where the time and place for an election are fixed by law, the statutory provisions for giving notice of such election are merely directory and not mandatory; but contend that where the time and place are not so fixed, but some board or person is designated to give the notice, the notice of the election given by such board or person, with respect to time and place, must comply strictly with the statutory provisions.

By reason of the fact, we presume, that generally in this country a majority of the votes cast at any election is not required to elect, but a plurality of the votes cast is sufficient, no cases have been cited, or have come to our attention, which are closely analogous to the case at bar. In support of their demurrer, counsel have cited the cases of *The People* v. *Porter*, 6 Cal. 26 ; and *Kenfield* v. *Irwin*, 52 Cal. 164. In these cases the elections were special elections in the sense that they were held to fill vacancies in office occurring before the expiration of the full terms for which the incumbents were elected. The elections were held void, because no proclamations by the governor had been made designating the officers to be chosen and the time for holding the elections. These cases do not seem to us to be in point, since in the case at bar the *time* for holding the election *was designated* by the board of aldermen, who had authority to designate the time, the question being whether their order designating the particular time for holding the election was void, or merely irregular.

Counsel have also cited a number of cases relating to elections held for special purposes. *Harding* v. *R. R. I. & St. L. R. R. Co.* 65 Ill. 90, in which legislative authority had been given to county authorities to subscribe in behalf of their county to the capital stock of a railroad company, upon an election resulting in favor of their doing so. The thirty days' notice required by one of the acts not having been given, the election was held void. *George* v. *Oxford Township*, 16 Kans. 72, was a case similar to the last. The legislature had given authority to a township to issue its bonds for the purpose of aiding in the building of a bridge, upon condition that a majority of the electors should first vote for their issue. The act required that at least thirty days' notice of the election should be given by posting notices. The election was held only eighteen days after the act took effect, and the election was held invalid. *Pratt et al.* v. *Swanton*, 15 Vt. 147, a vote of a town-meeting appointed a committee to build a bridge. The meeting was warned only eleven days before it was held, and the law required twelve days. The committee contracted with the plaintiff to build a bridge. In a suit against the town on the contract, it was held that the meeting was unauthorized, and that its proceedings were not binding on the town. *State* v. *Van Winkle*, 25 N. J. Law, 75; *Greenbanks* v. *Boutwell*, 43 Vt. 207, were cases relating to the voting of taxes or assessments by school districts. The meetings were not notified as required by statute and were held void. *Haddox* v. *County of Clarke*, 79 Va. 677: the election in this case was for the purpose of determining whether or not licenses for the sale of liquors should be granted. The act provided for submitting the question of liquor licenses or no liquor licenses to the qualified voters of certain counties named, and to the qualified voters of each magisterial district therein, on the Tuesday succeeding the first Monday in November, 1880, and every two years thereafter. The election was held November 2, 1880, which resulted in a majority against liquor licenses in one of the districts. The sheriff, however, omitted to post the notices of the election required by the act, and it was held, notwithstanding the fact that the time of holding the election was fixed by law, that the election was void. *Jones* v. *State of Kansas*, 1 Kans. 273, was the case of an election fixing the location of a county seat. It

was held to be the duty of the commissioners on canvassing the votes, if they should find that no place had received a majority of the votes cast, to proclaim that result, and also the time for the second election in that event provided for in the act, and to canvass the votes at the second election and proclaim that result, the same as at the first. The first election was held, and no place had a majority of the votes cast, but the commissioners failed to proclaim the result. The second election was held at the time provided for, and the town of Leroy received a majority of the votes cast. As in the preceding case, notwithstanding the fact that the time of holding it was fixed by law, the election was held void for want of the proclamation by the commissioners.

It will be seen from the foregoing review of the cases referred to that they were special elections for special purposes, and of a very different type from the election which we have under consideration. The reasons for holding the provisions for notice in these cases mandatory were much stronger than exist in the present case, since in them the voters would be likely to receive notice only in the method prescribed ; while in the case at bar the election was the last of a series of elections held in consequence of failures to elect at prior elections, by reason of neither of the candidates receiving a majority of the votes cast, of all of which the electors had had full notice, and which were, practically, a continuance of the first election, though made distinct elections by the statute. Moreover, in the cases relating to the subscription to the capital stock of a railroad company, or to the issue of bonds by municipal corporations, the elections were held, in pursuance of special legislative authority, for purposes foreign to the ordinary functions of municipal bodies, with reference to which the rule is, that the authority to hold such elections must be clearly conferred and strictly pursued. *Harding* v. *R. R. I. & St. L. R. R. Co.* 65 Ill. 90.

Counsel call our attention particularly to the language of the court in *George* v. *Oxford Township*, 16 Kans. 72, mentioned above, as clearly enunciating the principle for which they contend. We do not deny the principle so laid down as applicable to that case and others of its class, but we do deny that it is a principle of universal application. In the nature of things, whether the provision of a statute is mandatory or directory in a particular

case must be determined by a consideration of the statute itself; whether mandatory or directory depends on the intent of the legislature, which is to be arrived at from a consideration of the act and its purpose, and the results which will flow from adopting the one or the other of the constructions contended for, and by all other legitimate methods of interpretation. It is, therefore, impossible to formulate a principle which shall be of universal application.

A careful consideration of the provision for notice contained in § 14, referred to, confirms us in the conclusion that such provision is to be regarded as directory and not mandatory. In the first place, the provision occurs in the section with, and in immediate connection with, the provision for ward meetings for the purpose of general elections, or elections the time and place for holding which are fixed by law, in relation to which it is conceded that the statutory notice is merely directory. The provision for other elections in case of a failure to elect is contained in another distinct section, to wit, § 16, and it is necessary to resort to construction to apply the provision for notice to such elections. See, *ante*, opinion of February 6th. Is the provision to be regarded as directory merely in regard to the class of elections with which it is immediately connected in the statute, and mandatory in regard to another class of elections with reference to which it is so remotely connected? We see no reason for so holding.

Again, if the provision is to be regarded as mandatory, its requirement must be strictly complied with, not only as to the number of days, but also as to the number of notices posted in each ward, and these notices must also be posted in public places, and remain posted the entire period covered by the requirement. Suppose that through accident or design but two notices instead of three should be posted in one ward, or that one of the notices should happen to be posted in a place not public, or should be torn down a few minutes before the expiration of the full seven days: if the provision is mandatory, and therefore a strict or precise compliance with its terms is necessary, should we not be compelled to hold that an election in such a case was void, though perfectly regular and valid in every other respect? To hold an election void for such slight defects of notice, it may well be thought,

would be absurd; we cannot suppose that the General Assembly intended that an election should be invalidated on such slight grounds. But if the requirement is mandatory, instead of directory, where is the court to draw the line between the defects which are to be regarded as sufficient and those which are insufficient to invalidate an election?

Counsel in support of the demurrer contend, secondly, that the election was void under Pub. Stat. R. I. cap. 238, § 4, which provides that "all town-meetings of the freemen, inhabitants or residents of this State, or any portion of the same, for the election of any town, city, ward, county, or state officers, called or held in any town or city in this State, except in the manner, for the purposes, at the times, and by the persons by law prescribed, are illegal and void," etc. The contention rests on the assumption that, as the election was ordered to be held only three days after the preceding election, when the statute, as is contended, required *at least* seven days' notice to be given, the order was void, and hence that the election was void, because called for a time not prescribed by law. If, however, the provision requiring seven days' notice be merely directory, as we have seen, the order of the board of aldermen, fixing the election two days thereafter, though irregular was not void, and the election at the time named therein, though liable to be set aside for the irregularity, was not necessarily illegal and within cap. 238, § 4, as an election called or held at a time not prescribed by law.

Counsel contend, thirdly, that the plea does not bring the case within the intimation in our former opinion that we were not prepared to hold that the election was void, notwithstanding the defect in the notice, if it should be made to appear that the electors had full knowledge of the election of December 5, 1891, and that a full expression of the popular will had been thereby obtained, since it appears that in each election down to and including the election of December 2, 1891, there was polled a constantly increasing vote, while on December 5, 1891, 934 less votes were cast than at the election of December 2d, and 866 less than at the election on November 3d. In answer to this suggestion, it is necessary only to refer to the averments of the answer, admitted by the demurrer, in substance, that the electors had full and actual notice of the elec-

tion on December 5th, and that no voter was in any way hindered or impeded in the exercise of his right of suffrage, and that the result of said election was in no wise affected by the failure to give a longer notice, and that a full and fair expression of the popular will was had at said election ; that the respondent received at said election 2,150 votes, which number was sufficient, not only to constitute a majority of the votes cast at said election, but also a majority of the votes cast at any of the three elections preceding, and a majority of the highest number of votes cast in the city of Pawtucket at any election ever held therein ; and that the result of said election could not have been changed save by the attendance of 1,181 additional voters, all voting against the respondent ; and that no election of any other candidate could have been had save by the attendance of 1,599 additional voters, all voting against the respondent and for one of the other candidates. The plea further avers that the day appointed for the election and all matters relating thereto were fully known to each and all of the relators, and that each and all of them had full opportunity to attend, and were in no way hindered in the exercise of their right of suffrage, but that, knowing full well that said election was widely known to the electors, and that in consequence of the great publicity and of the great public interest and of the convenience to the electors of the day appointed, there would be a full attendance of the electors, and that their will would have complete expression, and that the respondent would be elected by a great majority ; but desiring to defeat the will of the electors, and contriving to defeat the election of a mayor, etc., the relators combined together to prevent the electors from voting thereat, and on the day preceding the election sent messengers throughout said city to request voters not to attend the polls, and busied themselves in requesting voters not to go to the polls, and on the day of said election attended the ward meetings and dissuaded voters who had come to the polls with the intention of voting from casting their ballots ; that by this action of the relators, and of others acting in concert with them, a large number of qualified voters were induced to absent themselves from the polls or not to cast their ballots, and that in consequence thereof the vote cast at said election fell short of the total vote cast at the preceding elections.

We are of the opinion that the demurrer should be overruled and the plea sustained.